ISP

Related DDJ

EDDIE EZELL
FULL NAME

COMMITTED NAME (if different)

P.O. Box 219A  BLYTHE, CA 92226
FULL ADDRESS INCLUDING NAME OF INSTITUTION

IRONWOOD STATE PRISON

C-27124
PRISON NUMBER (if applicable)

**FILED**
CLERK, U.S. DISTRICT COURT

8/7/18

CENTRAL DISTRICT OF CALIFORNIA
BY CS          DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

EDDIE EZELL

PLAINTIFF,

v.

CITY/COUNTY OF LOS ANGELES

DEFENDANT(S).

CASE NUMBER  CV18-6785-DMG(KK)

_To be supplied by the Clerk_

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** _(Check one)_
☑ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

EVIDENTIARY HEARING REQUESTED
JURY TRIAL REQUESTED

A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☑ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a.  Parties to this previous lawsuit:
    Plaintiff _____

    _____

    Defendants _____

    _____

b.  Court _____

    _____

c.  Docket or case number _____

d.  Name of judge to whom case was assigned _____

e.  Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it
    appealed? Is it still pending?) _____

f.  Issues raised: _____

    _____

    _____

g.  Approximate date of filing lawsuit: _____

h.  Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.  Is there a grievance procedure available at the institution where the events relating to your current complaint
    occurred? ☑ Yes   ☐ No

2.  Have you filed a grievance concerning the facts relating to your current complaint? ☑ Yes   ☐ No

    If your answer is no, explain why not _____

    _____

    _____

3.  Is the grievance procedure completed? ☑ Yes   ☐ No

    If your answer is no, explain why not _____

    _____

4.  Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff  EDDIE EZELL
                                                          (print plaintiff's name)
who presently resides at  IRONWOOD STATE PRISON
                          (mailing address or place of confinement)
were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
IRONWOOD STATE PRISON  —  BLYTHE
                 (institution/city where violation occurred)

on (date or dates) SEE ATTACHMENT " A "

(Claim I)              (Claim II)              (Claim III)

NOTE:   You need not name more than one defendant or allege more than one claim. If you are naming more than
five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.   Defendant   JACKIE LACEY                                    resides or works at

211 WEST TEMPLE STREET   LOS ANGELES CA. 90012
(full address of first defendant)

DISTRICT ATTORNEY
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

SEE ATTACHMENT " A "

2.   Defendant   JOHN BREAULT                                    resides or works at
(full name of first defendant)

211 WEST TEMPLE STREET   LOS ANGELES CA 90012
(full address of first defendant)

PROSECUTOR
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

SEE ATTACHMENT " A "

3.   Defendant   MICHAEL MCCLEERY                                resides or works at
(full name of first defendant)

(full address of first defendant)

DETECTIVE   (INGLEWOOD)
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

SEE ATTACHMENT " A "

4.  Defendant  N/A _____ resides or works at
            (full name of first defendant)

    _____
    (full address of first defendant)

    _____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

5.  Defendant  N/A _____ resides or works at
            (full name of first defendant)

    _____
    (full address of first defendant)

    _____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

D. CLAIMS*

CLAIM I

The following civil right has been violated:

SEE ATTACHMENT " A"

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

SEE ATTACHMENT " A"

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

ATTACHMENT "A"

EXPLAIN HOW THIS DEFENDANT WAS ACTING UNDER COLOR OF LAW:

1. AS A REPRESENTATIVE OF STATE LAW FOR THE CITY/COUNTY OF LOS ANGELES IN HER SUPERVISORY CAPACITY DISTRICT ATTORNEY JACKIE LACEY CONTINUOUSLY ALLOWS PROSECUTORS UNDER HER SUPERVISION TO USE FRAUDULENT AND DECEPTIVE METHODS COMMITTING PERJURY BY CONTINUALLY PRESENTING AT EVERY PAROLE CONSIDERATION HEARING CHARGES AND EVIDENCE KNOWN TO BE FALSE AND FABRICATED AND THAT PLAINTIFF IS ACTUALLY AND FACTUALLY INNOCENT OF. HOWEVER, THE PROSECUTOR'S PRESENT THESE CHARGES AND EVIDENCE AS GENUINE AND AS IF PLAINTIFF IS COMPLETELY GUILTY. THIS IS THE ULTIMATE MIS-USE OF POWER. BY PEOPLE WHO POSSESS THIS POWER BY VIRTUE OF STATE LAW AND MADE POSSIBLE ONLY BECAUSE THE WRONGDOERS ARE CLOTHED WITH THE AUTHORITY OF STATE LAW.

2. PROSECUTOR JOHN BREAULT ACTING UNDER THE COLOR OF LAW IN THE COURSE OF PERFORM-ING HIS DUTIES IN HIS INDIVIDUAL AND OFFI-CIAL CAPACITY MISUSED AND ABUSED POWER THAT HE POSSESSED BY VIRTUE OF STATE LAW, SPECIFI-CALLY, COMMITTED PERJURY BY PRODUCING FRAUD-ULENT AND DECEITFUL DOCUMENTS PLANTING FALSE AND FABRICATED CHARGES AND EVIDENCE THAT PLAN-

PAGE 1 OF 27

ATTACHMENT "A"

TIFF IS ACTUALLY AND FACTUALLY INNOCENT OF PRO-
SECUTOR JOHN BREAULT. BY ADMITTING THE FALSE
CHARGES AND EVIDENCE WITHIN THE PROBATION
OFFICER'S REPORT, AND THE SUPPORTING DOCUMENTS
ALSO VIOLATED THE PLEA AGREEMENT DEPRIVING
PLAINTIFF OF THE DUE PROCESS CLAUSE, 5TH, 6
TH, AND 14TH AMENDMENT.

   3. LEAD INVESTIGATOR MICHAEL MCCLEERY
OF THE INGLEWOOD POLICE DEPARTMENT IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY VIOLATED
STATE LAW. SPECIFICALLY, BY FALSIFYING A PRO-
BATION OFFICER'S REPORT AND CERTAIN OTHER
SUPPORTING DOCUMENTS WITH FALSE, ALTERED,
FABRICATED AND FRAUDULENT CHARGES AND
EVIDENCE; COMMITTED PERJURY IN AND FROM
THAT PROCESS THE LEAD INVESTIGATOR ALSO VIO-
LATED THE 4TH AMENDMENT, APPLICABLE TO THE
STATES THROUGH THE 14TH AMENDMENT TO CON-
SPIRE TO VIOLATE A CITIZENS RIGHT BY FALSI-
FYING LEGAL REPORTS, DOCUMENTS AND ANY OTHER
PAPERS AND PRESENTING THEM AS GENUINE AND
TRUE.

PAGE 2 OF 27

ATTACHMENT "A"

D. CLAIM*

## CLAIM 1

FALSE CHARGES - ACTUAL INNOCENCE: THE STATE COURT'S DENIAL OF PLAINTIFF'S 851.8 PETITION FOR THE SEALING OF ADULT RECORDS WAS IN VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS OF LAW AS GARANTEED BY AMENDMENTS 5, 6 AND 14 TO THE UNITED STATES CONSTITUTION. SPECIFICALLY, THE COURT REFUSES TO REMOVE AND SEAL RECORDS FOR CHARGES KNOWN TO BE FALSE AND THAT PLAINTIFF IS ACTUALLY AND FACTUALLY INNOCENT OF, WHICH IS UNREASONABLE, CONTRARY AND ARBITRARY (EXH. A). SEE NAPUE V ILLINOIS (1959) 360 U.S. 264; SCHLUP V DELO (1995) 513 U.S. 295; ALI V HICKMAN (9TH CIR. 2009) 571 F.3d 902.

A. SUPPORTING FACTS:

1. ON AUGUST 6, 1978 PLAINTIFF WAS ARRESTED FOR THE MURDER OF ANITA LEE, HER 5-YEAR OLD DAUGHTER NICOLE LEE AND A 13-YEAR OLD FRIEND DEBRA JONES. THE CHARGES WERE DROPPED SHORTLY AFTER ARREST.

2. ON SEPTEMBER 9, 1978 THE CHARGES WERE REFILED ALONG WITH THE ADDITIONAL MURDER OF DEBRA JO NEWTON; THE MURDER AND RAPE OF BETTY COOK AND ALSO THE BURGLARY OF HER RESIDENCE (EXH. D AT 1-7).

3. ON AUGUST 9, 1979 PER PENAL CODE SECT.

PAGE 3 OF 27

995 THE RAPE AND BURGLARY CHARGES CONNECTED
TO BETTY COOK WERE SET ASIDE (EXH. D AT 2-4)

4. ON JANUARY 5, 1981 PER PLEA AGREEMENT
PLAINTIFF PLED GUILTY TO THE MURDER'S OF ANITA
LEE AND DEBRA JONES IN EXCHANGE FOR THE
REMAINING CHARGES BEING DISMISSED (EXH. E AT
6).

5. ON JANUARY 27, 1981 THE PROBATION OFFICER'S
REPORT WAS PREPARED AND SUBMITTED BY LEAD
INVESTIGATING OFFICER MICHAEL McCLEERY
WITH THE APPROVAL OF PROSECUTOR JOHN BREAULT
(EXH. F AT 6). WHEN THE PROBATION OFFICER'S
REPORT WAS COMPLETE IT NOT ONLY CONTAINED
THE ORIGINAL 7 CHARGES THAT PLAINTIFF ALLEG-
EDLY COMMITTED, BUT ALSO 2 ADDITIONAL RAPE
CHARGES NOT PREVIOUSLY CHARGED AGAINST ANITA
LEE AND DEBRA JO NEWTON (EXH'S. D AT 1-7; F AT
6, 7, 11 AND 12).

6. ALSO CONTAINED IN THE PROBATION OFFICER'S
REPORT WERE NEW, ALTERED, PERJURED, FALSE,
FABRICATED AND PREVIOUSLY UNDISCLOSED THE-
ORIES, CONJECTURES AND FACTS PLANTED TO
MORE STRONGLY SUGGEST PLAINTIFF AS THE
ONLY LIKELY SUSPECT IN THE MURDER'S OF
DEBRA JO NEWTON AND BETTY COOK (EXH'S F AND
G AT 4-6).

7. ON FEBRUARY 10, 1981 DURING THE SEN-
TENCING HEARING DEFENSE ATTORNEY DWIGHT

1  ASKED THE COURT TO MAKE COMMENTS ON THE
2  CONCERNS HE HAD ABOUT HOW THE PROBATION
3  OFFICER'S REPORT WAS AUTHORED: (1) IT CONTAINED
4  THE ONE RAPE AND BURGLARY CHARGE ALREADY
5  SET ASIDE BY THE COURT; (2) 2 ADDITIONAL RAPE
6  CHARGES NOT PREVIOUSLY MENTIONED; (3) THE
7  MURDER'S OF DEBRA JO NEWTON AND BETTY COOK
8  THAT WERE TO HAVE BEEN DISMISSED; (4) FALSELY
9  ENTERED EVIDENCE THAT THE VICTIMS HAD BEEN
10 BOUND; STRANGLED; (5) THE PERJURED AND ALTERED
11 TIME OF DEATH OF ANITA LEE, NICOLE LEE AND
12 DEBRA JONES AND (6) THE ARSONS THAT WERE
13 NOT PREVIOUSLY CHARGED (EXH. G AT 4-6).
14    8. ALL THE SENTENCING JUDGE NANCY WATSON
15 DID WAS STATE THAT ATTORNEY STEVENS COMMENTS
16 WERE APPROPRIATE, BUT THAT THE EVALUATION
17 SPOKE FOR ITSELF. THE JUDGE WAS INDIFFERENT
18 TO THE REPORT CONTAINING PREVIOUSLY SET
19 ASIDE CHARGES, 2 ADDITIONAL FALSE RAPE CHARGES
20 , THE NEW AND UNDISCLOSED EVIDENCE, FACTS,
21 PERJURED STATEMENTS, THEORIES AND CON-
22 JECTURES. SPECIFICALLY, VIOLATING PLAINTIFFS
23 RIGHT TO PROCEDURAL DUE PROCESS, 5TH, 6TH
24 AND 14TH AMENDMENTS (EXH. G AT 7).
25    9. PLAINTIFF PETITIONED THE STATE COURT TO
26 SEAL THE RECORDS OF THE FOLLOWING FALSE
27 CHARGES: (1) THE RAPE AND BURGLARY AGAINST
28 BETTY COOK (SET ASIDE 8/9/79) (2) THE FALSE

PAGE 5 OF 27

1  RAPE CHARGES AGAINST DEBRA JO NEWTON AND
2  ANITA LEE THAT WERE NOT PROVEN OR PREVIOUSLY
3  CHARGED AND THAT PLAINTIFF WAS ALSO ACTUALLY
4  AND FACTUALLY INNOCENT OF; (3) DUE TO THE FACT
5  THAT PLAINTIFF WAS CHARGED, NOT CONVICTED
6  OF AND THAT THE MAJORITY OF THE EVIDENCE
7  THAT EVEN CONNECTED PLAINTIFF TO THE MURDER'S
8  OF DEBRA JO NEWTON AND BETTY COOK WAS
9  FALSE, PLANTED, ALTERED, FABRICATED, PERJURED
10  AND CONTRADICTORY, ALSO ASKED THAT THOSE
11  CHARGES BE SEALED. SPECIFICALLY, DUE TO THE
12  FACT THAT PLAINTIFF IS CONSTANTLY BEING
13  PUNISHED AS IF ACTUALLY GUILTY OF ALL THE
14  FALSE CHARGES AND FALSE EVIDENCE AT EVERY
15  LEVEL BY STATE REPRESENTATIVES AND CONSTANTLY
16  SUFFERING VERY HARMFUL AND ADVERSE CON-
17  SEQUENCES, WHICH ARE ALSO CONSTANTLY
18  VIOLATING PROCEDURAL DUE PROCESS (EXH'S. A,
19  B, C AND H).
20                    CLAIM 2
21          EQUAL PROTECTION: THERE ARE CONSTANT,
22  UNREASONABLE, ARBITRARY AND CONTRARY ACTIONS
23  BEING TAKEN BY PRISON OFFICIALS THAT ARE DEPRIVING
24  PLAINTIFF OF RIGHTS UNDER THE FEDERAL CONSTITUTIONS
25  1ST, 8TH AMENDMENT, EQUAL PROTECTION AND PROCE-
26  DURAL DUE PROCESS CLAUSE OF THE 14TH AMENDMENT.
27  SPECIFICALLY, BY CONTINUALLY CLASSIFYING PLAINTIFF
28  WITH THE USE OF FALSE, FABRICATED AND UNCONVICTED

CHARGES AND EVIDENCE, AS A SERIAL MURDERER, SERIAL RAPIST, ARSONIST AND BURGLAR (EXH's B, C AND H). SEE U.S. V LANIER (1997) 520 U.S. 529 ; WOLFE V MCDONNELL (1974) 418 U.S. 539 ; SANDIN V CONNER (1995) 515 U.S. 472.

A. SUPPORTING FACTS:

1. PLAINTIFF's ACTUAL COMMITMENT OFFENSE IS 2 COUNTS OF FIRST DEGREE MURDER (ALTHOUGH NOT CONVICTED PLAINTIFF HAS CONSISTENTLY TAKEN RESPONSIBILITY FOR THIRD VICTIM NICOLE LEE).

2. PLAINTIFF HAS **ONE** PRIOR CONVICTION FOR FORCIBLE RAPE (1973), RELEASE ON PAROLE FROM THE YOUTH AUTHORITY 6/3/75. AFTER A LITTLE OVER A YEAR ON PAROLE PLAINTIFF COMMITTED AN ATTEMPT RAPE, BUT STOPPED HIMSELF FROM COMPLETING THE ACT, WAS SENTENCED AND PLACED ON PROBATION 9/24/76. PLAINTIFF COMMITTED **NO** FURTHER SEXUAL CRIMES NOR ANY VIOLENT CRIME WHILE ON PROBA- TION FOR 18 DAYS SHORT OF 2 YEARS (EXH. F AT 4-5) ON SEPTEMBER 9, 1978 PLAINTIFF WAS ARRESTED AND CHARGED WITH THE COMMITMENT OFFENSE.

3. PRISON OFFICIALS AT "EVERY" LEVEL HAVE AND ARE CONTINUALLY RESENTENCING, RECONVICTING AND PUNISHING PLAINTIFF FOR : (1) 3 RAPES THAT HE IS ACTUALLY AND FACTUALLY INNOCENT OF ; (2) A BURGLARY CHARGE THAT WAS SET ASIDE ; (3) ARSON CHARGES THAT WERE NOT FILED OR CONVICTIONS ; (4) 2 MURDERS THAT WERE NOT CONVICTIONS AND THE

MAJORITY OF THE EVIDENCE, FACTS, THEORIES, CONJECTURES AND DOCUMENTS EVEN CONNECTING PLAINTIFF TO THESE CRIMES ARE BASED ON FALSE AND PERJURED STATEMENTS, ALTERED AND CORRUPTED EVIDENCE, FACTS AND CORONER'S REPORT AND VERY DECEPTIVE, MALICIOUS AND HARMFUL CONTRADICTIONS, THEORIES, STATEMENTS AND FACTS (EXHS. B, C AND H) SEE SCHLUP V DELO (1995) 513 U.S. 295

4. PLAINTIFFS DUE PROCESS RIGHTS AND THE RIGHTS TO FAIR AND IMPARTIAL HEARINGS HAVE BEEN GREATLY AND CONSTANTLY ABUSED AND DENIED. FURTHER, PLAINTIFF IS CONTINUALLY BEING FORCED TO ENDURE ATYPICAL, UNFAIR, UNREASONABLE, BIASED AND ARBITRARY SITUATIONS AND FORCED TO ENDURE VERY SIGNIFICANT AND ADVERSE HARDSHIPS DUE TO THE PRISON OFFICIALS CONTRARY, AND SPECIOUS DECISIONS (EXHS. B, C AND H).

5. DESPITE THE FACT THAT PLAINTIFF HAS PROVEN TO EXEMPLARY BEHAVIOR, EVIDENCE OF REHA-BILITATION AND HAS NO SERIOUS PRISON DISCIPLINARIES SINCE 1985, HE HAS BEEN UNFAIRLY AND FALSELY GIVEN AN AUTOMATIC CLASSIFICATION SCORE OF 19 POINTS AND MADE PERMANENT LEVEL 3 STATUS (EXH. B).

6. DUE TO THIS ONE AMONG MANY UNFAIR, UN-JUST, UNDESERVED, BIASED, ADVERSE AND ARBITRARY DECISION BY STATE REPRESENTATIVES PLAINTIFF HAS CONSTANTLY BEEN DEPRIVED OF MANY RIGHTS,

PAGE 8 OF 27

1  PRIVILEGES AND OPPORTUNITIES THAT WITH THE PRO-
2  PER AND DESERVED CLASSIFICATION STATUS COULD
3  HAVE BEEN ENJOYED, JUST AS SIMILARLY SITUATED
4  LIFE INMATES HAVE. PLAINTIFF HAS BEEN DEPRIVED
5  OF THE OPPORTUNITY TO MOVE TO A LOWER LEVEL
6  INSTITUTION CLOSER TO HIS AGING PARENTS THAT
7  HE HAS NOT SEEN IN 3 YEARS; CHANCES FOR MORE
8  AVAILIBLE REHABILITATIVE PROGRAMING; UNFAIRLY
9  DENIED THE OPPORTUNITY TO POSSIBLY FULFILL THE
10  THERAPY OR PROGRAMS RECOMMENDED BY THE
11  PAROLE BOARD TO INCREASE CHANCE OF RELEASE
12  (EXH. B).

13  ## CLAIM 3

14  UNREASONABLE, UNFAIR AND ADVERSE PAROLE
15  BOARD DECISION'S: PLAINTIFF IS CHALLENGING THAT
16  "EVERY" PAROLE BOARD'S DECISION DENYING PAROLE HAS
17  BEEN ILLEGAL, UNFAIR, CONTRARY, UNREASONABLE,
18  AND BIASED (1984-2016). EVERY HEARING HAS DE-
19  PRIVED PLAINTIFF OF THE RIGHT TO A PROCEDURAL
20  DUE PROCESS, EQUAL PROTECTION, FAIR AND IMPARTIAL
21  DECISIONS, 5TH, 6TH, 8TH AND 14TH AMENDMENT.
22  SPECIFICALLY, THE PAROLE DENIALS HAVE BEEN
23  CRUEL AND UNUSUAL AND GREATLY AT TIMES BASED
24  MORE ON FALSE AND FABRICATED CHARGES AND
25  EVIDENCE, DECEPTIVE, FALSE, ALTERED, AND PER-
26  JURED FACTS, STATEMENTS, THEORIES AND DOCU-
27  MENTS MORE THAN THE ACTUAL COMMITMENT
28  OFFENSE (EXHS. C, F AND H). SEE SANDIN V CONNER

PAGE 9 OF 27

(1995) 515 U.S. 472, 481-484°; NARUE V ILLINOIS (1987) 360 U.S. 264, 218 AND SCHLUP V DELO (1995) 513 U.S. 295.

A. SUPPORTING FACTS:

1. PLAINTIFF'S ACTUAL COMMITMENT OFFENSE IS 2 COUNTS OF FIRST DEGREE MURDER (CONSISTENTLY HAS TAKEN RESPONSIBILITY FOR MURDER OF THIRD VICTIM IN THE IMMEDIATE OFFENSE NICOLE LEE) WITH A SENTENCE OF 7-YEARS TO LIFE CONCUR-RENTLY, WITH A MINIMUM OF 84 MONTHS (7-YRS.) AND A MAXIMUM SET AT 192 MONTHS (16 YRS.) (EXH. I)

2. "EVERY" PAROLE DENIAL (1984-2016) HAS BEEN GREATLY RELIANT ON THESE FACTORS: (1) THE RAPE OF ANITA LEE (FALSE); (2) THAT THE PLAINTIFF MURD-ERED ANITA LEE BETWEEN MIDNIGHT AND 2AM, THEN LEFT FOR 2 HOURS RETURNED AND MURDERED DEBRA JONES AND NICOLE LEE BETWEEN 4AM AND 6AM (FALSE AND CONTRADICTED EXH. G AT 7) AS A MEANS TO BE RID OF WITNESSES; (3) STRONGLY BELIEVE THAT HE ALSO RAPED AND MURDERED DEBRA JO NEWTON AND BETTY COOK (RAPES FALSE, MURDER'S UNPROVEN AND UNCONVICTED); (4) GIVE GREAT WEIGHT TO THE PROBATION OFFICER'S REPORT AND (5) GIVE GREAT WEIGHT TO PSYCHOLOGICAL EVALUATIONS THAT JUST AS THE BOARD CONTINUALLY RETRIES, RESENTENCES, AND RECONVICTS PLAINTIFF AS A SERIAL MURDERER AND SERIAL RAPIST. (EXHS. C AND H).

3. PLAINTIFF CHALLENGES THAT "EVERY" BOARD DECISION AND "EVERY" PSYCHOLOGICAL EVALUATION THAT HAS BEEN MADE BASED ON ANYTHING OTHER THAN PLAINTIFFS IMMEDIATE COMMITMENT OFF-ENSE OF 2 COUNTS OF FIRST DEGREE MURDER HAS BEEN UNFAIR, UNREASONABLE, IN VIOLATION OF PROCEDURAL DUE PROCESS AND EQUAL PROTECTION OF THE 14TH AMENDMENT.

4. FOR MORE THAN 38 YEARS PLAINTIFF HAS BEEN UNFAIRLY AND UNJUSTLY PUNISHED BY "EVERY" BOARD PANEL AND "EVERY" PSYCHOLOGIST WHOSE DECISIONS AND EVALUATIONS HAVE BEEN GREATLY DEPENDENT ON DOCUMENTS THAT AT BEST ARE HEARSAY BASED MORE ON PERJURY, FALSE AND MALICIOUS CONJECTURE, CONTRARY, DECEPTIVE, CONTRADICTORY STATEMENTS, FACTS AND THEORIES SURROUNDED BY THROWN OUT, DISMISSED, FALSE, FABRICATED, ALTERED CHARGES AND EVIDENCE CONSTANTLY DEPRIVING PLAINTIFF DUE PROCESS OF LAW AND 14TH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION.

5. "EVERY" PAROLE BOARD HAS GREATLY USED "EVERY" FALSE AND UNFAIR PSYCHOLOGICAL EVALUATION (WITH THE EXCEPTION OF 2 DR. ISAAC SHARON 8/5/ 94 AND DR. WILLIAM WALSH 11/27/95 (EXH. C AT 44 AND 47) THAT HAS FALSELY, ARBITRARILY AND HARMFULLY EVALUATED PLAINTIFF AS IF HIS COMMITMENT OFFENSE IS ACTUALLY 5 COUNTS OF MURDER, 3 COUNTS OF

RAPE, 2 COUNTS OF ARSON AND 1 COUNT OF BUR-
GLARY; CONTINUALLY AND UNFAIRLY EVALUATING
HIM AS VERY HIGH RISK TO REOFFEND SEXUALLY
AND VIOLENTLY AND UNSUITABLE FOR RELEASE
; FURTHERMORE, THEY ASSERT THAT PLAINTIFF
WILL "NEVER" GAIN TRUE INSIGHT OR REMORSE
FOR HIS CRIMES UNTIL HE ACCEPTS AND ADMITS
RESPONSIBILITY THAT HE RAPED AND MURDERED
DEBRA JO NEWTON; RAPED AND MURDERED BETTY
COOK AND THAT HE RAPED ANITA LEE (3 RAPES
THAT NEVER HAPPENED (EXHS. D AT 2-4 AND EXH.
H AT 13) 2 MURDERS, 2 ARSONS AND A BURGLARY
CHARGES THAT WERE EITHER UNCHARGED, UNFILED,
SET ASIDE OR UNCONVICTED THAT PLAINTIFF SHOULD
HAVE NEVER BEEN SUBJECTED TO AND CERTAINLY
NOT PUNISHED FOR.

    6. "EVERY" TIME PLAINTIFF HAS EXPRESSED
CONCERNS ABOUT WHY HE IS CONSTANTLY BEING
PUNISHED OR EXPECTED TO ADMIT GUILT FOR CRIMES
THAT HE IS INNOCENT OF, HE IS TOLD THAT HE
HAS NO CREDIBILITY, HE HAS RAPED BEFORE
AND HE PROBALY RAPED AGAIN BECAUSE THE FACTS
AND EVIDENCE SHOWS THAT HE DID, AND UNTIL
HE CAN FULLY EXPLAIN HIS CRIMES ALL OF HIS
CRIMES HE WILL BE UNFIT FOR PAROLE (EXH.
C AT 24-32 AND H).

CLAIM 4

MALICIOUS PROSECUTION: ON JANUARY 5,

PAGE 12 OF 27

1981 PLAINTIFF PLED GUILTY TO 2 COUNTS OF FIRST DEGREE MURDER "ALL" OTHER CHARGES WERE TO BE DISMISSED (EXH. E AT 6), HOWEVER, ON JANUARY 27, 1981 PROSECUTOR JOHN BREAULT AND LEAD INVESTIGATOR MICHAEL MCCLEERY PREPARED AND SUBMITTED FALSE AND MALICIOUS DOCUMENTS DEPRIVING PLAINTIFF OF HIS RIGHTS SECURE UNDER THE 4TH AND 14TH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES", ARTICLE I §§ 7 AND 13 OF THE CALIFORNIA CONSTITUTION AND 42 U.S.C. §§ 1983. SPECIFICALLY, THESE STATE REPRESENTATIVES PRODUCED DOCUMENTS WITH FRAUDULENT, HARMFUL, AND DECEITFUL PURPOSE AS GENUINE AND TRUE. SEE COLE V ARKANSAS (1946) 333 U.S. 196; RUSSELL V U.S. (1962) 369 U.S. 749, 766-768; COUNTY OF SACRAMENTO V LEWIS (1998) 523 U.S. 833.

A. SUPPORTING FACTS:

1. PLAINTIFF PLED GUILTY TO THE MURDERS OF ANITA LEE AND DEBRA JONES 1/5/81 PER PLEA AGREEMENT (ALTHOUGH NOT CONVICTED CONSISTENTLY HAS ACCEPTED RESPONSIBILITY FOR THIRD VICTIM NICOLE LEE) AND ALL OTHER CHARGES WERE TO BE DISMISSED (EXH. E AT 6).

2. ON 1/27/81 THE PROBATION OFFICERS REPORT WAS PREPARED AND SUBMITTED BY THE PROSECUTOR AND LEAD INVESTIGATOR (EXH. F AT 6) WHICH CONTAINED NOT ONLY THE ORIGINAL CHARGES OF 5 COUNTS OF FIRST DEGREE MURDER, 1 COUNT OF

1   RAPE (THROWN OUT 995 MOTION 8/9/79), 1 COUNT
2   OF BURGLARY (THROWN OUT 995 MOTION 8/9/79), BUT
3   AN ADDITIONAL 2 FALSE AND PREVIOUSLY UN-
4   CHARGED RAPES (ANITA LEE AND DEBRA JO
5   NEWTON) COMPLETE WITH NEW UNDISCLOSED
6   THEORIES ON HOW PLAINTIFF (1) BOUND, RAPED
7   STRANGLED AND THEN MURDERED DEBRA JO NEWTON
8   , BETTY COOK AND ANITA LEE TO COVER UP THE
9   RAPES (FALSE), (2) COMMITTED ARSON AT THE SCENE
10  OF THE MURDERS OF DEBRA JO NEWTON AND BETTY
11  COOK (ALSO TO COVER UP THE RAPES (FALSE), (3) IN-
12  STEAD OF PLAINTIFF BEING HIGH ON PCP AND UNDER
13  STRESS OF HIS MOTHER BEING THREATENED, THE
14  NEW THEORY WAS THAT PLAINTIFF BOUND, RAPED AND
15  MURDERED ANITA LEE, WIPED DOWN THE CRIME
16  SCENE, LEFT FOR 2 HOURS AND THEN RETURNED
17  TO MURDER DEBRA JONES AND NICOLE LEE TO BE
18  RID OF WITNESSES (EXH. F)
19       3. PLAINTIFF CHALLENGES NOW AS HE HAS AT
20  EVERY PAROLE HEARING, PSYCHOLOGICAL EVALUATION
21  , STATE COURT AND CLASSIFICATION COMMITTEE (1)
22  THERE WAS NO CHARGE OF RAPE ON DEBRA JO
23  NEWTON OR ANITA LEE, (2) THERE WERE NO ARSON
24  CHARGES WITH THE MURDER OF DEBRA JO NEWTON
25  OR BETTY COOK, (3) THERE WAS NO PREVIOUS MEN-
26  TION OF ANY OF THE VICTIMS BEING STRANGLED OR
27  BOUND, (4) THERE WAS NO PRIOR MENTION THAT THE
28  THREE VICTIMS OF THE COMMITMENT OFFENSE BEING

PAGE 14 OF 27

MURDERED 2 HOURS APART UNTIL THE PROBATION OFF-
ICER'S REPORT WAS CREATED. (5) IF ANITA LEE WAS
THE ONLY VICTIM BOUND (PER THE THEORIES OF THE
ALLEGED WAY PLAINTIFF MURDERED THE COMMITMENT
OFFENSE VICTIMS) AND PLAINTIFF LEFT DEBRA JONES
AND NICOLE LEE UNBOUND FOR 2 HOURS, DID THEY
JUST SIT THERE DOING NOTHING UNTIL I RETURNED
TO GET RID OF WITNESSES; PLAINTIFF HAD THE PRESENCE
OF MIND TO WIPE DOWN THE CRIME SCENE (WHERE
IT SHOULD BE NOTED THAT HE HAD NO REASON TO
WIPE DOWN A PLACE HE HAD OFTEN VISITED AND
UNABLE TO RID ALL TRACE) BUT NOT THE PRESENCE OF
MIND TO LET WITNESSES JUST RUN LOOSE.

4. THERE IS PLENTY OF STRONG AND UNDENIABLE
PROOF THAT "ALL" OF THE DOCUMENTS AUTHORED BY
PROSECUTOR JOHN BREAULT AND LEAD INVESTIGATOR
MICHAEL MCCLEERY WERE CREATED WITH A VERY
SPECIFIC, FALSE, DECEPTIVE, FRAUDULENT AND
MALICIOUS PURPOSE, THAT TO THIS DAY HAS WORKED.

5. AS A DIRECT AND PROXIMATE RESULT OF THE
ABOVE REFERENCED UNLAWFUL ACTS AND UNLAWFUL
CONDUCT THESE STATE REPRESENTATIVES COMMITTED
UNDER THE COLOR OF LAW AND UNDER THEIR AUT-
HORITY AS REPRESENTATIVES OF THE LAW PLAINTIFF
HAS CONTINUALLY BEEN DEPRIVED OF HIS PROCEDURAL
DUE PROCESS, EQUAL PROTECTION RIGHTS, LIBERTY
INTEREST, 5TH, 6TH, AND 14TH AMENDMENTS.

6. THE PERJURIOUS, MALICIOUS, AND OUTRAGEOUS

CONDUCT OF THESE STATE REPRESENTATIVES HAS FOR
MANY YEARS CAUSED PLAINTIFF TO SUFFER SPECIAL
DAMAGES IN THE FORM OF UNFAIR, BIASED, ADVERSE,
INJURIOUS, UNREASONABLE AND ARBITRARY PAROLE
CONSIDERATION HEARING'S, PSYCHOLOGICAL EVAL-
UATIONS, CLASSIFICATION HEARINGS AND STATUS
ASSIGNATIONS (EXH'S A, B, C, H).

7. "EVERY" TIME PLAINTIFF APPEARS BEFORE A
BOARD OF PAROLE HEARING A PROSECUTOR FOR LOS
ANGELES COUNTY HAS BEEN PRESENT TO OBJECT TO
RELEASE ON PAROLE, BY PRESENTING THE SAME FALSE,
MALICIOUS, PERJURED AND ALTERED CHARGES, EVI-
DENCE, STATEMENTS, AND THEORIES OF HOW THE
PLAINTIFF (1) RAPED, STRANGLED AND MURDERED ANITA
LEE; (2) RETURNED 2 HOURS LATER TO MURDER DEBRA
JONES AND NICOLE LEE TO BE RID OF WITNESSES; (3)
RAPED, BOUND, STRANGLED AND MURDERED DEBRA JO
NEWTON; (4) RAPED, BOUND, STRANGLED AND MURDERED
BETTY COOK; (5) COMMITTED ARSON AT DEBRA JO
NEWTON AND BETTY COOK RESIDENCES TO COVER
UP THE RAPES AND MURDER'S. THUS CONTINUOUSLY
COMMITTING THE SAME UNLAWFUL ACTS AND CONDUCT
UNDER THEIR AUTHORITY AS STATE REPRESENTATIVES
OF LAW RECHARGING, RETRING, RESENTENCING AND
RECONVICTING PLAINTIFF OF MANY CHARGES THAT
HE IS ACTUALLY AND FACTUALLY INNOCENT OF AND
THAT NO REASONABLE JURIST WOULD EVER FIND GUIL-
TY OF. THEY CONTINUOUSLY QUOTE AND INDICATE THAT

1  PLAINTIFF IS GUILTY DUE TO THE MANY FALSE, MALICIOUS
2  , DECEPTIVE AND CONTRADICTORY FACTS, STATEMENTS,
3  PIECES OF EVIDENCE, ALTERED CORONER'S REPORTS
4  AND THEORIES. DEPRIVING PLAINTIFF OF PROCEDURAL
5  DUE PROCESS OF LAW, HIS 5TH, 6TH AND 14TH
6  AMENDMENT RIGHTS.
7                          CLAIM 5
8          VIOLATION OF PLEA BARGAIN - AGREEMENT: ON
9  1/5/81 AGREED TO ENTER A PLEA OF GUILTY TO 2
10 COUNTS OF FIRST DEGREE MURDER (COUNT V AND VI
11 OF THE INFORMATION) IN EXCHANGE FOR ALL OTHER
12 CHARGES BEING DISMISSED (EXH. E AT 6). THE PLEA
13 BARGAIN WAS VIOLATED ON 1/10/81. SPECIFICALLY, WITH
14 THE INTRODUCTION OF THE PROBATION OFFICER'S REPORT
15 AUTHORED BY PROSECUTOR JOHN BREAULT AND LEAD
16 INVESTIGATOR MICHAEL MCCLEERY (EXH. F AT 6) CON-
17 TAINING FALSE CHARGES AND EVIDENCE, PERJURED
18 AND FABRICATED STATEMENTS, FACTS AND THEORIES
19 VIOLATING PLAINTIFFS RIGHT TO PROCEDURAL DUE
20 PROCESS, 5TH, 6TH AND 14TH AMENDMENTS.
21                  A. SUPPORTING FACTS:
22    1. THE UNLAWFUL ACTS AND THE UNLAWFUL CONDUCT
23 OF THE PROSECUTOR, LEAD INVESTIGATOR AND
24 EVERY PROSECUTOR THAT ATTENDS PLAINTIFFS PAROLE
25 SUITABILITY HEARINGS DECLARING UNDER THE COLOR
26 OF LAW AND IN THEIR AUTHORITY AS STATE REP-
27 RESENTATIVES OF LAW PRESENTING ANY CRIME OTHER
28 THAN 2 COUNTS OF FIRST DEGREE MURDER HAS NOT

ONLY VIOLATED THE PLEA AGREEMENT (EXHS. E A 2, 5, 6) BUT IS ALSO COMMITTING PERJURY, RETRING, RE-CONVICTING AND CLAIMING PLAINTIFF IS GUILTY OF CRIMES THAT HE IS ACTUALLY AND FACTUALLY INN-OCENT OF; IMPLYING GUILT AND CONVICTION OF 2 MURDERS (DEBRA JO NEWTON AND BETTY COOK) THAT ARE ONLY CONNECTED TO HIM DUE TO FALSE, FABRI-CATED, AND CORRUPTED EVIDENCE; PERJURED, MALI-CIOUS AND OUTRAGEOUS THEORIES, STATEMENTS AND FACTS.

2. AS A DIRECT AND PROXIMATE RESULT OF THIS ILLEGAL, OUTRAGEOUS AND PERJURIOUS CONDUCT OF THESE STATE REPRESENTATIVES OF LAW PLAINTIFF HAS CONTINUALLY SUFFERED SPECIAL DAMAGES. SPECIFICALLY, IN THE FORM OF VERY UNFAIR, BIASED, UNREASONABLE, ARBITRARY, INJURIOUS AND ADVERSE CLASSIFICATION HEARINGS, PSYCHOLOGICAL EVALUATIONS AND ESPECIALLY BOARD OF PAROLE HEARINGS. SEE GIGLIO V U.S. (1972) 405 U.S. 150; STONE V POWELL (1976) 428 U.S. 465, 492-493; SCHLUP V DELO (1995) 513 U.S. 298

CLAIM 6

DOUBLE JEOPARDY: PLAINTIFF CONTENDS THAT HIS CONSTITUTIONAL PROTECTION AGAINST DOU-BLE JEOPARDY HAS/IS CONTINUOUSLY BEING VIOLATED EVERY TIME HE HAS BEEN PROSECUTED, RECHARGED, RETRIED, RECONVICTED AND PUNISHED FOR THE SAME CRIMES THAT WERE THROWN OUT OR DISMISSED; FOR THE SAME CRIMES AFTER CONVICTION AND HAS

RECEIVED MULTIPLE PUNISHMENTS FOR EACH OF
THESE CRIMES, SPECIFICALLY, THAT HE IS ACTUALLY
AND FACTUALLY INNOCENT OF. SEE BROWN V. OHIO (1977)
432 U.S. 161; ESTELLE V. MC GUIRE (1991) 502 U.S.
62.

A. SUPPORTING FACTS:

1. EVERY TIME THE STATE COURTS HAVE REFUSED
TO REMOVE OR CORRECT CRIMES AND EVIDENCE KNOWN
TO CLEARLY BE FALSE, PERJURED AND THAT NO REA-
SONABLE JURIST WOULD FIND GUILT, HAS ALLOWED
STATE REPRESENTATIVES AT EVERY LEVEL TO MAKE
UNREASONABLE, HARMFUL, ADVERSE, CAPRICIOUS AND
ARBITRARY DECISIONS.

2. "EVERY" TIME THE BOARD OF PAROLE HEAR-
INGS HAS DENIED PAROLE (EXH. C); "EVERY" TIME A
CLASSIFICATION COMMITTEE FALSELY AND UNFAIRLY
CLASSIFIES PLAINTIFF AND "EVERY" TIME PLAINTIFF HAS
BEEN UNFAIRLY AND FALSELY EVALUATED PSYCHOLOG-
ICALLY FOR ANY CRIME OTHER THAN HIS ACTUAL
COMMITMENT OFFENSE OF 2 COUNTS OF FIRST
DEGREE MURDER, AND HAS BEEN PUNISHED FOR,
DENIED HIS DESERVED RIGHTS AND PRIVILEGES THAT
HE HAS EARNED BY EXEMPLARY PROGRAMMING HIS
CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEO-
PARDY HAS BEEN VIOLATED.

CLAIM 7

JUDICIAL NEGLIGENCE: PLAINTIFF CONTENDS
THAT SENTENCING JUDGE NANCY WATSON ON 2/10/81

PAGE 19 OF 27

1. WAS NEGLIGENT IN HER DUTY THUS DEPRIVING
2. HIM OF PROCEDURAL DUE PROCESS OF LAW, 5TH,
3. 6TH AND 14TH AMENDMENT. SPECIFICALLY, BY
4. REFUSING TO HAVE THE PROBATION OFFICER'S REPORT
5. SUPPRESSED AND ORDERING A NEW REPORT ABSENT
6. FALSE CHARGES THAT SHE HAD PREVIOUSLY SET
7. ASIDE AND THAT WERE NOT PREVIOUSLY CHARGED;
8. FALSE, PERJURED AND ALTERED EVIDENCE, FACT, THEO-
9. RIES AND STATEMENTS NOT PREVIOUSLY PRESENTED.
10. SEE PYLE V KANSAS (1942) 317 U.S. 213; NAPUE V
11. ILLINOIS (1959) 360 U.S. 264, 269; COUNTY OF SACRA-
12. MENTO V LEWIS (1998) 523 U.S. 833.
13.                    A. SUPPORTING FACTS:
14.      1. DURING THE SENTENCING HEARING DEFENSE
15. ATTORNEY DWIGHT STEVENS ASKED TO MAKE COM-
16. MENTS PERTAINING TO THE PROBATION OFFICER'S
17. REPORT (EXH. G AT 3-6) (1) THE ONE RAPE AND
18. BURGLARY CHARGES THIS COURT HAS ALREADY THROWN
19. OUT IS IN THERE; (2) IT CONTAINS 2 ADDITIONAL
20. FALSE AND UNCHARGED CRIMES OF RAPE; (3) IT STATES
21. THAT HE HAS MURDERED 5 PEOPLE WHEN HE HAS
22. PLED TO 2 AND THE THIRD COULD BE ADDED, BUT NOT
23. THOSE OTHER 2 THAT AS YOUR HONOR KNOWS WAS
24. VERY WEAK; (4) THEY HAVE PUT IN THERE THAT THEY
25. WERE BOUND AND NO MENTION OF THAT WAS IN THE
26. EVIDENCE; (5) AND ONE LAST PART IS THAT IT SAYS
27. THAT HE MURDERED ONE VICTIM, LEFT, AND RETURNED
28. TO MURDER THE OTHER TWO 2 HOURS LATER. THAT

WAS NOT NOTED IN ANY OF THE EVIDENCE.

2. THE ONLY THING JUDGE NANCY WATSON DID WAS SAY THAT ATTORNEY STEVENS REMARKS RESPECTING THE PROBATION REPORT WERE APPRO-PRIATE, HOWEVER SHE FELT THAT THE EVALUATION SPOKE FOR ITSELF AND THE CRIMES INVOLVED WERE OF SUCH HORRENDOUS PROPORTIONS IT IS CLEAR THAT THE DEFENDANT SHOULD BE MAINTAINED IN CUSTODY FOR THE MAXIMUM PERIOD OF TIME PERMITTED BY LAW.

3. WHAT THE SENTENCING JUDGE DID BY ALL-OWING THE FALSE, THROWN OUT, FABRICATED, PER-JURED AND ALTERED CHARGES, AND EVIDENCE TO STAND WAS IN VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS OF LAW AND THE 14TH AMENDMENT.

4. THIS INACTION BY THE SENTENCING JUDGE WAS NEGLIGENT, MADE IT APPEAR TO "ALL" PRISON AND STATE REPRESENTATIVES THAT PLAINTIFF IS GUILTY OF "ALL" THE CHARGES AND EVIDENCE WITHIN THE PROBATION OFFICER'S REPORT AND HAS CAUSED PLAINTIFF CONTINUOUS HARMFUL, ADVERSE, BIASED, UNFAIR, ARBITRARY, AND UNREASONABLE AND CONTRARY DECISIONS THAT HE SHOULD NEVER HAVE BEEN SUBJECTED TO.

## CLAIM 8

NEGLIGENCE OF DEFENSE ATTORNEY: IT SHOULD BE NOTED THAT ALTHOUGH DEFENSE ATTORNEY DWIGHT STEVENS MADE COMMENTS ON HIS CONCERNS

OF THE WAY THE PROBATION OFFICER'S REPORT WAS PRE-
PARED AND PRESENTED PLAINTIFF BELIEVES THAT HE
WAS NEGLIGENT. SPECIFICALLY, ATTORNEY STEVENS
SHOULD HAVE OFFERED STRONGER MITIGATION, FUR-
THER MORE, ATTORNEY STEVENS FAILED IN HIS DUTY
TO PROVIDE ZEALOUS PRESENTATION IN THE VERY
ADVERSARIAL PROCESS IN MULTIPLE WAYS. SEE ROE
V. FLORES-ORTEGA (2000) 528 U.S. 668, 684-688, 684°;
SIMMONS V STATE BAR OF CAL. (1970) 87 CAL. RPTR. 368.

A. SUPPORTING FACTS:

1. SPECIFICALLY, WHEN THE SENTENCING JUDGE
NEGLIGENTLY ALLOWED THE FALSE, MALICIOUS AND
PERJURED PROBATION OFFICER'S REPORT STAND AS IT
WAS AUTHORED AND PRESENTED, ATTORNEY STEVENS
SHOULD HAVE IMMEDIATELY AND STRONGLY OBJECTED
AND FILED A MOTION TO SUPPRESS.

2. ATTORNEY STEVENS SHOULD HAVE ADVISED THE
PLAINTIFF TO WITHDRAW HIS GUILTY PLEA ON THE
GROUNDS THAT THE PLEA AGREEMENT WAS TOTALLY AND
COMPLETELY VIOLATED.

3. ATTORNEY STEVENS SHOULD HAVE ADVISED PLAI-
NTIFF TO FILE AN APPEAL IMMEDIATELY AGAINST THE
COURT AND THE PROBATION REPORT; FULLY EXPLAINED
THE LONG REACHING AND LASTING HARM, UNFAIRNESS,
BIAS AND ADVERSITY PLAINTIFF WOULD LIKELY FACE
AND SUFFER DUE TO THE DISMISSED, FALSE, UNPROVEN,
UNTRIED, UNCHARGED AND UNCONVICTED CHARGES; THE
ALTERED, FALSE, AND PERJURED EVIDENCE, CORONER'S RE-

PORT BEING USED AGAINST HIM.

4. ATTORNEY STEVENS NEVER ADVISED PLAINTIFF OF THE PURPOSE OF THE SENTENCING HEARING OR THE RELATED PROCEDURAL PRACTICE OF PRESENTING MITI-GATING FACTORS NOT LIMITED TO LETTERS AND CHAR-ACTER REFERENCES FROM THE TIME, NOR WAS IT EX-PLAINED TO PLAINTIFF THE IMPORTANCE OF ALLOCUTION, NOR THE CONSEQUENCES OF HIS SENTENCING HEAR-ING. SPECIFICALLY, SINCE THE PROSECUTION TEAM FALSIFIED AND FABRICATED CHARGES AND EVIDENCE TO INFLICT THE MOST SEVERE PUNISHMENT SHOCK-ING THE CONSCIENCE.

## CLAIM 9

EMOTIONAL DISTRESS: DUE TO THE CONTINUOUS PRESSURE OF HAVING TO UNSUCCESSFULLY DEFEND AT "EVERY" STATE LEVEL AGAINST FALSE, DISMISSED, UN-PROVEN, UNCHARGED, UNTRIED, AND UNCONVICTED AND DISTURBING CRIMES PLAINTIFF'S CIRCUMSTANCES HAVE BEEN MADE MUCH WORSE. SPECIFICALLY, THESE CRIMES HAVE NOT ONLY EXPOSED HIM TO THREATS OF PHYSICAL DANGER, BUT CONSTANT BIASED, UNFAIR, UNREASONABLE, HARMFUL, ADVERSE AND ARBITRARY CONDITIONS AND POSITIONS WHERE HE HAS BEEN CONTINUOUSLY DE-PRIVED OF RIGHTS AND PRIVILEGES GRANTED AND ENJOYED BY OTHER SIMILARLY SITUATED LIFE INMATES, THUS DEPRIVING PROCEDURAL DUE PROCESS, 5TH, 6TH, 8TH, AND 14TH AMENDMENTS. SEE WATSON V UNITED STATES

(2016) U.S. DIST. LEXIS 23250 ; SMITH V CITY OF
OAKLAND (2008) 538 F. SUPP 2d. 1217 AT 1241 (QUOTING
LIMONE ; MONELL V NEW YORK CITY DEP'T OF SOCIAL
SERVICES, 436 U.S. 658 (1978)

## A. SUPPORTING FACTS:

1. DUE TO A DOCUMENT (EXH. F) THAT AT BEST
IS COMPLETE AND UTTER HEARSAY BASED MORE
THAN ANYTHING ON PERJURY, FALSE AND MALICIOUS
CONJECTURE, DECEPTIVE AND CONTRADICTORY STATE-
MENTS, FACTS AND THEORIES SURROUNDED BY DIS-
MISSED, THROWN OUT, FALSE, ALTERED AND FABRICATED
CRIMES AND EVIDENCE, PLAINTIFF HAS BEGUN TO
FEEL THE SETTING IN OF GREAT DESPAIR AND
HOPELESSNESS.

2. PLAINTIFF IS CONTINUALLY BEING RETRIED,
RESENTENCED, RECONVICTED AND REPUNISHED AT
"EVERY" STATE LEVEL FOR CRIMES THAT HE IS ACT-
UALLY AND FACTUALLY INNOCENT OF (EXH's A,B,C AND H)

3. IT HAS BEEN VERY FRUSTRATING, UNCOMFORT-
ABLE, IRRITATING, STRESSFUL AND UNHEALTHY AT
TIMES TO SEE AND EXPERIENCE THE WAY STAFF AND
INMATES REACT OR LOOK AT YOU WHEN THEY VIEW
PLAINTIFFS CLASSIFICATION STATUS OR HEAR THAT
HE IS A SERIAL MURDERER AND SERIAL RAPIST.
NEVER KNOWING FROM DAY TO DAY HOW YOU'LL BE
TREATED, OR IF YOU'LL BE ATTACKED EMOTIONALLY
OR PHYSICALLY.

4. PLAINTIFF DUE TO THESE FALSE CHARGES AND

EVIDENCE HAS BEEN CONTINUALLY FOR MANY YEARS EXPOSED TO THE CONSTANT HUMILIATION, ANXIETY, SHAME, EMBARASSMENT, MENTAL ANGUISH, DAMAGE AND LOST TO MANY PERSONAL RELATIONSHIPS IN AND OUT OF PRISON.

   5. IT IS VERY DISAPPOINTING AND DISHEART-ENING FOR MANY YEARS TO PLAINTIFF AND HIS AGING PARENTS WHEN YEAR AFTER YEAR PLAIN-TIFF IS CONTINUALLY DENIED A FAIR, UNBIASED, JUST, IMPARTIAL, REASONABLE COURT HEARING'S, CLASSIFICATION HEARING'S, PAROLE CONSIDERATION HEARING'S AND PSYCHOLOGICAL EVALUATIONS AND CONSTANTLY BEING INFORMED THAT YOU HAVE NO CREDIBILITY, ARE A LIAR AND THAT YOU ARE GUILTY OF CRIMES, EVIDENCE AND FACTS THAT YOU KNOW AND HAVE PROVEN TIME AND TIME AGAIN ARE FALSE.

   6. IT IS VERY DIFFICULT TO CONSTANTLY HAVE TO FIGHT OFF STRESS, DEPRESSION, DESPAIR, HOPELESSNESS, OR ANOTHER HEART ATTACK OR STROKE WHEN YOU ARE CONTINUALLY BEING TOLD THAT YOU WILL NEVER GAIN TRUE OR REAL HEART-FELT REMORSE AND INSIGHT NOR BE READY FOR RELEASE ON PAROLE UNTIL YOU ACCEPT TOTAL RESPONSIBILITY AND GUILT FOR CHARGES AND EVIDENCE, FACTS AND THEORIES THAT ARE FALSE, FABRICATED, ALTERED, CORRUPTED, DECEPTIVE OR NEVER OCCURRED. (EXHS. C, F, AND H).

## CLAIM 10

ILLEGAL DETAINMENT: PLAINTIFF IS CHALLENGING THE VALIDITY OF HIS CONTINUED INCARCERATION WHICH CONSTITUTES A CONCRETE AND CONTINUING INJURY. SPECIFICALLY, DUE TO THE FACT THAT THE CONTINUED INCARCERATION IS BASED ON FALSE CHARGES AND EVIDENCE VIOLATING PLAINTIFFS 5TH, 6TH, 14TH AMENDMENT. UNITED STATES V MORGAN (1954) 346 U.S. 502; EVITTS V LUCEY (1985) 469 U.S. 387.

### A. SUPPORTING FACTS:

1. PLAINTIFFS COMMITMENT OFFENSE CARRIED A MINIMUM TERM OF 84 MONTHS (7 YRS) AND A MAXIMUM OF 192 MONTHS (16 YRS), HOWEVER DUE TO FALSE, FABRICATED, ALTERED AND CORRUPTED CHARGES AND EVIDENCE PLAINTIFF HAS NOW BEEN INCARCERATED APPROXIMATELY 472 MONTHS (39 YRS 4 MONTHS) 280 MONTHS (23 YRS 4 MONTHS) OVER HIS MAXIMUM (EXH. I).

2. PLAINTIFF FURTHER CONTENDS THAT THERE IS A VERY GREAT POSSIBILITY THAT HAD NOT "ALL" PAROLE HEARINGS, CLASSIFICATION HEARINGS, AND PSYCHOLOGICAL EVALUATIONS BEEN BASED AND GREATLY DEPENDENT UPON FALSIFIED, PERJURED AND DECEPTIVE DOCUMENTS CONTAINING FALSE, FABRICATED, ALTERED AND CORRUPTED CHARGES AND EVIDENCE PLAINTIFF WOULD IN ALL LIKELIHOOD HAVE EARNED AND BEEN GIVEN RELEASE ON PAROLE MANY YEARS AGO, ESPECIALLY

CONSIDERING THE EXEMPLARY AND POSITIVE PROGRAM-
MING OF PLAINTIFF SINCE 1985.

3. UNDER THE 5TH, 6TH, 14TH AMENDMENTS,
SPECIFICALLY, DUE PROCESS BOTH SUBSTANTIAL AND
PROCEDURAL AS WELL AS THE CONFRONTATION
CLAUSE OF THE FEDERAL CONSTITUTION THE
PLAINTIFF HAS BEEN DENIED HIS FREEDOM
WITH THE USE OF FALSE AND FABRICATED
CHARGES AND EVIDENCE THAT HE IS ACTUALLY
AND FACTUALLY INNOCENT OF (EXH's. A, B, C, AND
H).

4. THE CUMULATIVE EFFECTS OF THE VIOLA-
TIONS SPECIFIED IN THE PREVIOUS CLAIMS (1-9)
COMBINED TO DEPRIVE PLAINTIFF OF PROCEDURAL
DUE PROCESS AND EQUAL PROTECTION CLAUSE UNDER
THE 14TH AMENDMENT AND HAS CREATED SPECIAL
INJURY.

E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

1. GRANT AN EVIDENTIARY HEARING ON THE CLAIMS;
2. GRANT THE CIVIL RIGHTS COMPLAINT;
3. GRANT INJUNCTIVE RELIEF PROHIBITING THE CONTINUED USE OF "ALL" FALSE, FABRICATED CHARGES AND EVIDENCE; "ALL" DECEITFUL, PERJURED AND FALSE DOCUMENTS; "ALL" DISMISSED, UNCHARGED, STRICKEN, UNTRIED AND UNCONVICTED CHARGES;
4. GRANT COMPENSATORY DAMAGES IN THE AMOUNT OF 12,000,000;
5. GRANT PUNITIVE DAMAGES IN THE AMOUNT OF 12,000,000;
6. EXPUNGE "ALL" REFERENCES TO THE DISMISSED, STRICKEN, FALSE, PERJURED, DECEPTIVE AND FABRICATED CHARGES AND EVIDENCE FROM PLAINTIFFS CENTRAL FILE;
7. APPOINT COUNSEL, AWARD REASONABLE ATTORNEY FEES;
8. GRANT ANY OTHER AND FURTHER RELIEF THE COURT DEEMS DESERVED AND PROPER.

APRIL 26, 2018                    Eddie Ezell
_____(Date)_____              _____(Signature of Plaintiff)_____

PROOF OF SERVICE

Declaration of Service by Mail

I, ___EDDIE EZELL_____, declare that I am over the age of

Eighteen (18) and that I (am/am not) a party to this action. On APRIL 26, 2018,

I deposited a copy of the following document (s):

(1) CIVIL RIGHTS COMPAINT PUSUANT 42 U.S.C. §1983 (6 PGS.)
(1) ATTACHMENT "A" CLAIMS AND SUPPORTING FACTS (27 PGS.)
(1) SUPPORTING EXHIBITS (A-I) (191 PGS.)
(1) REQUEST TO PROCEED WITHOUT PREPAYMENT OF FILING FEES
WITH DECLARATION IN SUPPORT (3 PGS)

in a sealed envelope with the postage prepaid into the United States mail outlet via an
authorized California Department of Corrections and   Rehabilitation employee at
Ironwood State Prison, in Riverside County, Blythe California, and addressed as follows:

E-FILED
U.S. DIST. COURT
CENTRAL DIST. OF CALIF.
312 NORTH SPRING ST., RM. G-8
LOS ANGELES, CA 90012
    ATTENTION: PRO SE CLERK

I declare under penalty of perjury by the laws of the State of California that the foregoing
is true and correct (pursuant to 28 USCA 1746 (2) ).

Date: APRIL 26, 2018          Signature: Eddie Ezell

1  EDDIE EZELL
2  C-27124
3  P.O. BOX 2199
4  BLYTHE, CA 92226
5  IRONWOOD STATE PRISON
6  PRO SE
7

8  EDDIE EZELL                    | CASE NUMBER
9        PLAINTIFF,
10       V.                        | EXHIBITS IN SUPPORT OF
11 CITY/COUNTY OF LOS ANGELES      | CIVIL RIGHTS COMPLAINT
12       DEFENDANT(S).             | PURSUANT TO 42 U.S.C. § 1983
13

14         TABLE OF CONTENTS                          PAGES

15  EXHIBIT A  851.8 PETITION AND DENIAL                8
16  EXHIBIT B  CDC CLASSIFICATION DECISIONS            18
17  EXHIBIT C  BOARD OF PAROLE HEARING'S DECISIONS      73
18  EXHIBIT D  ORIGINAL COMPLAINT FORMS                 7
19  EXHIBIT E  PLEA BARGAIN - AGREEMENT TRANSCRIPT     10
20  EXHIBIT F  PROBATION OFFICER'S REPORT              16
21  EXHIBIT G  SENTENCING HEARING TRANSCRIPT           10
22  EXHIBIT H  PSYCHOLOGICAL EVALUATIONS               45
23  EXHIBIT I  TERM CALCULATION                         3
24
25
26
27
28

# EXHIBIT "A"

EXHIBIT "A"

1   EDDIE EZELL

2   C-27124

3   P.O. BOX 2199

4   BLYTHE, CA 92226

5   IRONWOOD STATE PRISON

**FILED**
LOS ANGLES SUPERIOR COURT

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Calvin Ho

6

7          SUPERIOR COURT OF CALIFORNIA

8          COUNTY OF LOS ANGELES

9

10  EDDIE EZELL                    | CASE NO.

11      PETITIONER,                |

12          V.                     | PER: PENAL CODE SECT. 851.8,

13  THE PEOPLE OF THE STATE        | PETITION TO SEAL RECORDS OF

14  OF CALIFORNIA,                 | A PERSON FACTUALLY

15      RESPONDENT.                | INNOCENT OF CRIMES AND

16                                 | CHARGES

17

18

19

20          FACTUAL SUMMARY AND PROCEDURAL

21  HISTORY IN CASE NUMBER A345576, PETITIONER WAS

22  ARRESTED ON 08/06/78 FOR THE MURDER OF ANITA

23  LEE, HER FIVE-YEAR OLD DAUGHTER NICOLE LEE, AND

24  A 13-YEAR OLD FRIEND DEBRA JONES. THE CHARGES

25  WERE DROPPED SHORTLY AFTER THE ARREST. ON 09/

26  07/78 THE CHARGES WERE REFILED ALONG WITH THE

27  MURDER OF DEBRA JO NEWTON'; THE MURDER AND

28  RAPE OF BETTY COOKE AND ALSO BURGLARY OF HER

1

1  RESIDENCE (EXH. 1:1-7).

2            ON 08/09/79 PER PENAL CODE SECTION

3  995 THE RAPE OF BETTY COOKE AND THE BURGLARY

4  OF HER RESIDENCE CHARGES WERE DISMISSED (EXH.

5  1:2, 3 AND 4).

6            ON 01/05/81 PER PLEA AGREEMENT

7  PETITIONER PLEAD GUILTY TO THE MURDER OF

8  ANITA LEE AND DEBRA JONES IN EXCHANGE FOR

9  THE REMAINING CHARGES BEING DISMISSED (EXH. 2:

10  6).

11            ON 02/10/81 THE PROBATION OFFICER'S

12  REPORT WAS CONSTRUCTED BY THE INVESTIGATING

13  OFFICER MICHAEL MC CLEERY WITH THE OKAY

14  OF PROSECUTOR JOHN BREAULT (EXH. 3:7). WHEN

15  THE PROBATION OFFICER'S REPORT WAS COMPLETE,

16  NOT ONLY WERE THE ORIGINAL 7 CHARGES THAT

17  THE PETITIONER ALLEGEDLY COMMITTED CONTAINED

18  WITHIN THE PROBATION OFFICER'S REPORT, BUT 2

19  ADDITIONAL RAPE CHARGES AGAINST ANITA LEE,

20  AND DEBRA JO NEWTON (EXH. 3:6,7, 11, AND 12).

21            ON 02/10/81 DURING THE SENTENCING

22  HEARING DEFENSE COUNSEL DWIGHT STEVENS

23  QUESTIONED THE 2 ADDITIONAL RAPE CHARGES, AND

24  STATED FACT THAT THE COURT HAD ALREADY THROWN

25  OUT THE ONE COUNT OF RAPE THAT WAS ACTUALLY

26  CHARGED. HE FURTHER QUESTIONED OTHER FACTS

27  AND EVIDENCE THAT HAD BEEN ADDED OR ALTERED

28  THAT DEFENSE HAD NO PRIOR KNOWLEDGE OF (EXH.

2

1   4:4-5). ALL THE COURT DID WAS STATE THAT
2   DEFENSE COUNSEL'S REMARK'S WERE APPROPRIATE
3   (EXH. 4:7).
4          NEGLIGENCE BY DEFENSE COUNSEL:
5   DEFENSE COUNSEL MR. STEVENS SHOULD HAVE FILED
6   A PENAL CODE SECTION 1538.5 TO MOVE TO HAVE
7   ALL OF THE FALSE EVIDENCE SUPPRESSED, WHICH
8   WOULD HAVE PROVIDED PETITIONER WITH AN
9   OPPORTUNITY FOR FULL AND FAIR LITIGATION OF HIS
10  FOURTH AMENDMENT RIGHT. FURTHER, MR. STEVENS
11  SHOULD HAVE TIMELY FILED A PENAL CODE SECTION
12  851.8 FOR DETERMINATION OF FACTUAL INNOCENCE
13  FOR THE BURGLARY AND THE RAPE CHARGES THAT
14  WERE DISMISSED IN THE BETTY COOKE CASE
15  PURSUANT PENAL CODE SECTION 995, AND THE RAPE
16  CHARGES THAT WERE NEVER FILED OR EVEN
17  COMMITTED AGAINST DEBRA JO NEWTON OR ANITA
18  LEE (EXH. 1:1-7)
19  THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE
20  GARANTIES THAT A CRIMINAL DEFENDANT MAY BE
21  PUNISHED FOR OR CONVICTED ONLY "UPON PROOF
22  BEYOND REASONABLE DOUBT EVERY FACT THAT IS
23  NECESSARY TO CONSTITUTE THE CRIME WITH WHICH
24  HE IS/WAS CHARGED."
25  DUE TO THE LACK OF ACTION BY THE COURT AND
26  DEFENSE COUNSEL PETITIONER HAS CONTINUALLY
27  BEEN SUBJECTED TO AND SUFFERED PUNISHMENT
28  THAT SHOULD NEVER HAVE HAPPENED. PETITIONER

3

1  SHOULD NEVER HAVE BEEN SUBJECTED TO THE
2  COMPULSION OF THE CRIMINAL LAW, BECAUSE
3  NO OBJECTIVE FACTORS JUSTIFIED OFFICIAL
4  ACTION. PETITIONER IS CONTINUALLY BEING
5  PUNISHED FOR, EXPECTED TO ACKNOWLEDGE
6  AND TAKE RESPONSIBILITY FOR FALSE EVIDENCE,
7  FACTS AND CRIMES THAT HE IS IN FACT
8  "FACTUALLY INNOCENT" OF (EHX. 5:9,10,11,14,19 AND
9  21).
10  ALTHOUGH PETITIONER WAS NOT CONVICTED FOR
11  THE MURDER OF NICOLE LEE, BUT HAS ALWAYS
12  ACCEPTED RESPONSIBILITY FOR (EXH. 5:9-10). AS
13  FOR THE MURDER'S OF DEBRA JO NEWTON AND
14  BETTY COOKE PETITIONER WOULD ALSO REQUEST
15  THOSE RECORDS BE SEALED PER 851.8 (C)(D) DUE
16  TO NO CONVICTION AND MORE SPECIFICALLY, THE
17  ONLY REASON PETITIONER WAS CONNECTED TO THOSE
18  MURDER CASES WERE DUE TO FALSE MOTIVES,
19  EVIDENCE AND CHARGES.
20      CIRCUMSTANCES WARRANTING RELIEF:
21  THE STATUE OF LIMITATIONS WITH REGARD TO THE
22  INITATION TO THE PROSECUTION OF A CRIMINAL
23  ACT IS SUBSTANTIVE, RATHER THAN PROCEDURAL
24  RIGHT WHICH CANNOT BE FORFEITED. THE STATUTE
25  OF LIMITATIONS, WHEN APPLICABLE, COMPLETELY
26  BARS THE PROSECUTION TO ALLOW DEFENDANTS TO
27  LOSE PROTECTION OF THE LIMITATION ACCIDENTALLY
28  COULD MEAN THAT PERSONS COULD LANGUISH IN

4

1  PRISON UNDER CONVICTIONS AND/OR PUNISHMENT
2  THAT COULD NOT HAVE OCCURRED HAD THEY MERELY
3  THOUGHT OF THE STATUTE OF LIMITATIONS IN TIME.
4  THUS, STRONG PUBLIC POLICY REASONS FAVOR
5  FINDING A STATUTE OF LIMITATIONS FOR THE INITIATION
6  OF A CRIMINAL PROCEEDING AN ISSUE OF FUNDAMENTAL
7  JURISDICTION. SUCH POLICY REASONS DO NOT EXIST
8  TO SO CONSTRUE THE STATUTORY DEADLINE FOR
9  FILING A PETITION TO EXPUNGE ARREST RECORDS.
10 RATHER, THE TIME FRAME SET FORTH IN PENAL
11 CODE SECTION 851.8, SUBD (I) IS MORE AKIN TO
12 A FILING DEADLINE FOR WHICH RELIEF FROM
13 DEFAULT MAY BE REGULARLY GRANTED. ALSO SEE
14 PER: BUSINESS AND PROFESSIONS CODE DIVISION 3,
15 SECTION 6068 DUTIES OF ATTORNEY, AND
16 GOVERNMENT CODE SECTION 27706 (A)(C) DUTIES,
17 AND ROE V. FLORES-ORTEGA 528 U.S. 668, 684-
18 688, 694 (2000), AND CALIFORNIA CODE OF CIVIL
19 PROCEDURE SECTION 340.6 (A)(3)(4)(6) ATTORNEY'S
20 WRONGFUL PROFESSIONAL ACT OR OMISSION:
21 TOLLING PERIOD.
22
23                    CONCLUSION
24 PETITIONER CONTENDS THAT THE EVIDENCE SHOWN
25 HERE ESTABLISHES THAT FACTS EXIST WHICH
26 WOULD LEAD NO PERSON OF ORDINARY CARE AND
27 PRUDENCE TO BELIEVE OR CONSCIENTIOUSLY
28 ENTERTAIN ANY HONEST AND STRONG SUSPICION

1    THAT THE PERSON IS GUILTY OF THE CRIMES
2    PETITIONER IS REQUESTING THE SEALING OF
3    THE RECORD AND A FINDING OF FACTUAL INNOCENCE
4    , SPECIFICALLY, THOSE CHARGES THAT WERE NOT
5    PROVEN, CHARGED, TRIED OR CONVICTED, NOR THOSE
6    WHICH WERE DISMISSED PURSUANT PENAL CODE
7    SECTION 995, AND LASTLY THOSE CHARGES THAT
8    ONLY CONNECTED PETITIONER TO DO TO FALSE,
9    AND FABRICATED CHARGES AND EVIDENCE.
10   THOSE CHARGED WITH UPHOLDING THE LAW ARE
11   PROHIBITED FROM DELIBERATELY FABRICATING
12   EVIDENCE AND FRAMING INDIVIDUALS FOR
13   CRIMES THEY DID NOT COMMIT; THE PRINCIPLE
14   THAT A STATE MAY NOT KNOWINGLY USE FALSE
15   EVIDENCE, INCLUDING FALSE TESTIMONY TO OBTAIN
16   A TAINTED CONVICTION AND/OR PUNISHMENT. DUE
17   TO THESE FALSE, FABRICATED AND CORRUPTED
18   CHARGES AND EVIDENCE BEING A PART OF THE
19   RECORD AS IF PETITIONER IS ACTUALLY GUILTY
20   HIS DUE PROCESS RIGHTS UNDER THE 5TH, 6TH, 8TH
21   AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION
22   ARE CONTINUALLY BEING VIOLATED.
23   PETITIONER, PRAYS THAT THIS COURT, GRANT ANY AND
24   ALL EQUITABLE RELIEF IN COMPLIANCE WITH THE
25   AFOREMENTIONED PENAL CODE SECTION'(S).
26
27   DATE: 12/04/17          SIGNATURE: Eddie Eggob
28

6

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
CRIMINAL JUSTICE CENTER
210 WEST TEMPLE STREET, ROOM M-8
LOS ANGELES, CA 90012

PLAINTIFF/ RESPONDENT:
People of the State of California

DEFENDANT/PETITIONER:
EDDIE EZELL aka: EDDIE JONES

| | |
|---|---|
| NOTICE OF CALENDARED PETITION TO SEAL AND DESTROY ADULT ARREST RECORDS (PENAL CODE section 851.8) | CASE NUMBER/SEALING #: A345576<br><br>SO17-150 |

Reserved for Clerk's File Stamp

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 12 2017

Sherri R. Carter, Executive Officer/Clerk
BY _____, Deputy

You are hereby notified that a Petition to Seal and Destroy Adult Arrest Records pursuant to Penal Code section 851.8, in the above-entitled action has been filed.  Appearance by the defendant/petitioner and /or attorney is not required.   The defendant/ petitioner and or attorney will be notified of the decision by U.S. Mail.

A copy of the Petition and Declaration of Service are attached for your information.

The hearing on the Petition is calendared for:

| | |
|---|---|
| **DATE:** | JANUARY 05, 2018 |
| **TIME:** | 08:30 A.M. |
| **DEPARTMENT** | 100 |
| **ADDRESS:** | CRIMINAL JUSTICE CENTER 210 WEST TEMPLE STREET LOS ANGELES, CA 90012 |

CRIM 153          NOTICE OF CALENDARED PETITION TO SEAL          P.C. 851.8

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | |
|---|---|---|
| Date: January 18, 2018 | | |
| Honorable: Scott M. Gordon | Judge | M. Im |
| | | Judicial Assistant |
| | Bailiff | D. Van Dyke  CSR 10795 |
| | | Reporter |

(Parties and Counsel checked if present)

A345576-01

In the Matter of
Eddie Ezell (np)

Petitioner: Jane Marpet, PD (x)

Respondant: Bob Chen, DDA (x)

Nature of Proceeding: Petition to Seal and Destroy Adult Arrest Records (Penal Code 851.8)

The defendant is not present in court this date. The defendant previously plead guilty and was sentenced in this case.

The court orders the petition denied.

1

| Minutes Entered |
|---|
| 1/18/18 |

# EXHIBIT "B"

EXHIBIT "B"

State of California

Department of Corrections
CDC 128-G

No. C-27124                    NAME: EZELL

*Comment:*    **REFERRED TO CDW**

ICC of 3-19-13 referred this case to the CSR for transfer consideration to SATF-II SNY with an alternate of CVSP-II SNY. This case is referred to the CDW for the following reason:

- This case needs to be review by ICC for exclusion from level II facilities based on CCR 3375.2 (a)(7) in the new revised regulations (Serial Killer).

CS = 19. LIFE Prisoner Status is noted. Next BPT hearing currently scheduled for 03/2023. There are no MHSDS needs per CDC 128-C dated 3-24-99. Inmate is NDD per CDC 128-C2 of 4-24-03. R suffix is noted. Arson concern is noted. Violent history noted (VIO). Escape noted. Based on current criteria, I/M is permanently precluded from lower custody placement options. TB Code is 22. CDC 812 is clear. Confidential file is noted.

B. Moyes, CSR

**Date: 4/22/2013**          **Classification - CSR ACTION**          CMC-E

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTION
CDC-128G (Rev 2/69)

| No. C-27124 | Name: EZELL, Eddie | | Bed: 1125 U | | CS: 19 | Level: III |
|---|---|---|---|---|---|---|

Custody: MEDA/R          Annual: 02/2014          Assignment: BLD2 PTR FOYER

WG: A1     PG: A          EFF: 3/26/1987     Care Level: GP          DDP: NDD          DPP: N/A          TBA: 22

WL: N/A          TABE: GED /          Next BPH NLT: 03/12/2023 SUB #10     Release Date: MEPD 08/11/1985

CSRA L          FD/FHC:     N / Y          IHC:RE          PC 2933 INELIG          PC 2933.05 INELIG

Rx:     RFR CSR RX TX CIM-III (SNY) LV-II O/R VIO ALT RJD-III (SNY) LV-II O/R VIO per CCR 3375.2(a)(7)-Serial
          Killer. Permanently ineligible for LV-II Housing Placement. Retain Code "P" for VIO/SEX/LIF/ARS/ESC

S appeared before CMCE-III Facility-A ICC on this date for Transfer Review. S was last seen before the CMC-E III Facility-A ICC for Annual and Post Board review on 03/19/13 with the determination for non adverse LV-II Transfer. *Per CSR action of 04/22/13 this case was referred to the CDW noting S required ICC review for exclusion from Level II facilities based on CCR 3375.2(a) (7) as a serial killer under the new adopted department policy. Per Departmental Definition the term 'serial killings' means a series of three or more killings, not less than one was committed within the US, having common characteristics such as to suggest the reasonable possibility that the crimes were committed by the same actor or actors. A*

Date:     05/07/2013          CUSTODY REVIEW In Person          Inst:          CMC-E / FAC-A

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128G (Rev 2/69)

No.   C-27124          Name:     EZELL, Eddie          Bed:   1125 U

*determination shall be made by the reviewing ICC committee that the case factors of the inmate detain, one or more offenders, two or more murdered victims, the incidents occurred in separate events, at different times and the time period between murders separates serial murder from mass murder. Committee today will evaluate S case factors in accordance with CCR 3375.2(a) (7) and current Departmental policy. Committee agrees S does meet the definition of Serial Killer due to the following;* on 11/25/75 the body of the female victim was found in her apartment. She had been strangled and her body placed on the bed. The bed and the victim's body had been ignited. Two years later on 10/19/77 another female victim was found in her apartment (details located on Pg#7 of POR dated 01/27/81-located in case summary section) raped, strangled and her body found tied, spread eagle fashion, to her bed. S set a fire at the residence resulting in a gas meter explosion. *S was determined to be the perpetrator in both cases.* Additionally, noted in LA POR dated 01/27/81 located in the case summary section, page 2 details that on 07/29/78, *S committed the murder of three innocent and unsuspecting female victims. The victims were aged 25, 13 and 5 years. They were all murdered in the same location on 07/29/78. The 25 year old victim was raped and strangled and suffered in excess of 30 stab wounds. The 5 year was stabbed and her throat cut, the 13*

Date:     05/07/2013          CUSTODY REVIEW In Person          Inst:          CMC-E / FAC-A

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128G (Rev 2/69)

No.   C-27124          Name:     EZELL, Eddie          Bed:   1125 U

*year old was stabbed in excess of 30 times.* **Committee notes S has a similar MO in the commission of his crimes, in that he chooses to kidnap, rape, torture, stab and set fire to his victims. S also has several attempted rapes that very closely followed the same pattern. Committee agrees S is ineligible for Level II facilities based on CCR 3375.2(a)(7) in accordance with the new revised regulations defined as a Serial Killer. Committee actions: Committee elects to preclude S form lower custody and housing placement as the case factors meet the criteria of a serial killer per CCR 3375.2 (a) (7) and RFR CSR RX TX CIM-III (SNY) LV-II O/R VIO, ALT TX RJD-III (SNY) LV-II O/R VIO. Transfer is considered non adverse and based on S's case factors. S will retain Medium A/R Custody and WG/PG A1/A effective 03/26/87 upon transfer.** CDC 128C-2 dated 04/24/03 notes NDD designation. DPP: No concerns. R-Suffix has been reviewed and remains appropriate for the 05/30/73 CYA term for Rape (CYA-4690) in and the 09/26/73 term of 6 months to 20 years YA GCF for Forcible Rape in which S was required to register per PC 290 and 03/11/76 PV charge of PC 220-Attempted Rape (360 days jail) and current I/O on 03/04/81 which includes a conviction for PC 261.2 Forcible Rape. S is

Date:     05/07/2013          CUSTODY REVIEW In Person          Inst:          CMC-E / FAC-A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTION
CDC-128G (Rev 2/69)

No. C-27124          Name: EZELL, Eddie                          Bed: 1125 U          CS: 19          Level: III
Custody: MEDA/R          Annual: 02/2014          Assignment: BLD2 PTR FOYER
WG: A1          PG: A          EFF: 3/26/1987          Care Level: GP          DDP: NDD          DPP: N/A          TBA: 22
WL: N/A          TABE: GED /          Next BPH NLT: 03/12/2023 SUB #10     Release Date: MEPD 08/11/1985
CSRA L          FD/FHC:     N / Y          IHC:RE          PC 2933 INELIG          PC 2933.05 INELIG
Rx:     RFR CSR RX TX CIM-III (SNY) LV-II O/R VIO ALT RJD-III (SNY) LV-II O/R VIO per CCR 3375.2(a)(7)-Serial
          Killer. Permanently ineligible for LV-II Housing Placement. Retain Code "P" for VIO/SEX/LIF/ARS/ESC

required to register per PC 290. **The Last CSR Endorsement dated 03/11/03 for CMCE-III CS=28 is no
longer valid due to a reduction in Placement Score.** S is ineligible for MSF/CAMP due to
VIO/LIF/SEX/ESC/ARS/MED. *Per CDC 128-C-3 dated 03/10/10, S is Frequent Basic Consultation/Limited
Duty/Medium Risk and Low-Intensity Nursing.* **Close Archive file (s) # B-97379** has been ordered for
review on 03/18/13 and ordered prior per UCC action of 01/28/98 (see archive section). CYA #Y4690
(06/13/73) has been purged and is now longer available for review. S's prior term was on 09/26/73 for a
Probation Revocation of PC 261.2 Attempted Rape, receiving a 6 month to 20 year term. S was discharged

Date:   05/07/2013                          **CUSTODY REVIEW In Person**                          Inst:          CMC-E / FAC-A
STATE OF CALIFORNIA                                                                                              DEPARTMENT OF CORRECTIONS
                                                                                                               CDC-128G (Rev 2/69)

No. C-27124          Name: EZELL, Eddie                          Bed: 1125 U

on 02/09/81 and convicted on 03/04/81 for the present Life Term. FPTTP: N/A as S is a U.S. Citizen. IHC:
RE. S stated he would like to transfer to CIM-III (SNY) for family reunification as his mother lives in
the Hawthorne area of Southern California. When discussing S's housing, S indicated he does not feel
he can successfully program in a GP setting if required to transfer outside of CMCE-III. S stated he
considers CMCE-III to be a "soft yard" and equivalent to an SNY housing facility. S stated he can safely
program in the General Population while housed in CMCE-III however, if required to transfer; S will request
SNY housing placement due to his successful programming at CMC-E III and his commitment offense
which include multiple sex offenses. Committee discussed SNY housing with S and informed him of the
ramifications and stigma associated with an SNY designation, to which S acknowledged full understanding
and stated he did not foresee it being a problem. Committee admonished S regarding behavioral
expectations in an SNY, to which S acknowledged and assured committee there would be no problems.
Committee believes S is compatible with the SNY population and that he would not prey on other SNY
inmates. Other than the aforementioned, there are no other changes in S's case factors since Initial review
at CMC-E on 03/30/99. Compas Core Risk Assessment is not requires as S is a Life inmate with a CSRA

Date:   05/07/2013                          **CUSTODY REVIEW In Person**                          Inst:          CMC-E / FAC-A
STATE OF CALIFORNIA                                                                                              DEPARTMENT OF CORRECTIONS
                                                                                                               CDC-128G (Rev 2/69)

No. C-27124          Name: EZELL, Eddie                          Bed: 1125 U

score of 1-Low. Inmate fully participated in today's hearing and discussed his program with the committee.
He stated he understood and agreed with committee's decision. Next scheduled UCC is for Annual Review
on 02/14.
COMMITTEE MEMBERS:

J. GASTELO; CDA (A); CHAIRPERSON,   B. PHILLIPS; F/C (A), RECORDER,   M. HORSLEY; CCII (A);

Date:   05/07/2013                          **CUSTODY REVIEW In Person**                          Inst:          CMC-E / FAC-A

State of California

Department of Corrections
CDC 128-G

No. C-27124

NAME: EZELL

Comment:    ISP-III(SNY) endorsed. CS = 19. Administrative Placement: VIO

Requested institutions are not currently available. Placement is based on the availability of institutional programs and housing per PC 5068. LIFE Prisoner Status is noted. Next BPT hearing currently scheduled for 03/2023. There are no MHSDS needs per CDC 128-C dated 3/24/99. Inmate is NDD per CDC 128-C2 of 4/24/03. R suffix is noted. Arson concern is noted. Violent history noted (VIO). Escape noted. Based on current criteria, I/M is permanently precluded from lower custody placement options. TB Code is 22. 812 is noted. Confidential file is noted. Medium Medical Risk, Low Intensity Nursing is noted per CDC 128C-3 dated 3/10/10. Per ICC action dated 5/7/13 is noted. Inmate is excluded from lower custody placement pursuant to CCR 3375.2(a)(7).

**This transfer approval expires 10/22/2013 and will require return to CSR for re-authorization.**

Date: 6/24/2013

C.Ervin, CSR

Classification - CSR ACTION

CMC-E

④

CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

MAR 2 9 2017

APPEALS OFFICE

# CLASSIFICATION COMMITTEE CHRONO

| Inmate Name: EZELL, EDDIE L. | Date: 02/24/2017 |
|---|---|
| CDC#: C27124 | Date of Birth: 04/28/1954 |

| Hearing Date: 02/28/2017 | Hearing Type: Annual |
|---|---|
| Committee Type: Institution Cls. Committee (ICC) | Correctional Counselor: C. Moreno |

**STATIC CASE FACTORS**

**CRITICAL CASE FACTORS**

### CLINICIAN COMMENTS

### COMMITTEE ACTION SUMMARY

Annual Retain ISP-III, CPP, Excluded from level I or II Facilities per 3375.2 (a)(7). Double cell Clear. BPH 04/27/2021

### COMMITTEE COMMENTS

DUE PROCESS: Inmate Ezell, was review by ISP's Unit Classification Committee (UCC) in Absentia on 02/28/2017 this date for an Annual review. The inmate was notified of committee review via the CDCR 128B-1 dated 2/24/2017. He was interviewed prior to UCC's review of this case and effective communication was achieved noting TABE score of 12.9. Effective communication was achieved by speaking slowly and using simple English No disabilities or issues requiring assistance for effective communication are noted. Inmate Ezell has NO MHSDS/DDP/DPP issues which would require additional means to achieve effective communication. He participated in UCC's review of this case and agrees with committee's action(s). He was informed of his right to appeal committee's decision.

CASE FACTORS: He is a 62 (DOB: 12/09/1971) year old,  Black  received 2 life terms for murder 1st.  Inmate Ezell  is Medium A(R). (2) qualifying six month review periods of serious disciplinary free behavior and (2) qualifying period of satisfactory work performance (02/01/16-01/31/17). His classification score remains at 0; however his Mandatory classification score is (19).

1/07/1993 LIFER
06/18/1999 SEX per CSR 06/24/2013
06/23/2013 ESC per CSR 06/24/2013
CCR3000and 3375-(a)(10)
CCR3375.2(e)(13)an inmate with a case factor described in subsections 3377.(b)(2)(A),3377.2(b)(2)(B) or 3377.2(b)(2)(C)shall be ineligible  for minimum custody. An inmate with a history of one or more walkaways from nonsecure settings. Not to include Drug Treatment Furlough Community Correctional  Reentry Centers and Community Reentry Programs, shall not be placed in minimum custody settings for atleast 10 years following the latest walkaways.
06/24/2013 ARS per CSR 05/24/2012
-I/O burned body of murder victims
06/24/2013  VIO per CSR 06/24/2013
-CCR3375.2(a)(7) serial killer.
-3375.2(a)(10)

TRANSFER: N/A

ADDITIONAL CASE FACTORS: Non-Confidential Separation Alert is Clear. Confidential Separation Alert is Noted, Confidential file is noted.

MEDICAL:
DPP Disabilities. NOTED
DME- Cane
Medical Classification Chrono Dated 02/11/2017 reflects  Permanent,
Level of Care: OP
Proximity to Consult: No Particular Need
Functional Capacity: Full Duty
Medical Risk: Medium risk
Nursing Care Acuity: Basic Nursing and cocci area 2 restricted.

COMMITTEE FURTHER NOTES:
"S" Reclassification Scoresheet and Emergency Notification Form have been reviewed and updated.
  CAMP/Minimum Support Facility (MSF): VIO/LIF
  CCF/MCCF: Not Eligible due to: LIF/VIO
  COCF:NOT Eligible

CDCR-SOMS-ICCT169   CDC NUMBER - C27124 NAME: EZELL, EDDIE L.                     Page 1 of 2

FPTTP: Inmate is NOT a Foreign Born National (FBN)
Reentry: Eligibility: Ineligible LIF
CSRA: 1
COMPAS v.4 Assessment completed:02/26/2016
Registrations and Notifications: noted
IHC:RE 08/22/2013.
Lifer is on the BPH calendar for Sub#11hearing NLT 4/27/2021
SVP

DISCIPLINARY FOR HOUSING ASSIGNMENT:  CLEAR
HOUSING ASSIGNMENT:
Committee notes that the inmate has no documented history of in-cell sexual abuse, assaultive, violent, or predatory behavior toward any cell partner that would preclude the inmate from double cell housing. I/M EZELL informed committee that he currently has a cellmate and is not experiencing a ny problems as a result. The inmate's integrated housing code is "RE" as he has no evidence of any racially motivated offenses. The inmate was also questioned relative to the Prison Rape Elimination Act (PREA). He indicated that no new information has come to light since his intake interview. He further indicated he had no abusiveness / victimization concerns to report.

APPEAL RIGHTS: EZELL was advised of Committees decision and his right to appeal this Committee action and that to preserve his appeal rights pursuant to time constraints, the appeal must be submitted within 30 calendar days of this date whether or not he has received the CDCR 128G classification chrono.

---

**RECORDER**

C. Moreno

02/28/2017

Date

---

**CHAIRPERSON**

B. Roe

02/28/2017

Date

---

CDCR SOMS ICCT162 - Classification Committee Chrono



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# CLASSIFICATION COMMITTEE CHRONO

| | |
|---|---|
| **Inmate Name:** EZELL, EDDIE L. | **Date:** 02/09/2018 |
| **CDC#:** C27124 | **Date of Birth:** 04/28/1954 |
| **Control Date:** Life With Parole | **Control Date Type:** Minimum Eligible Parole Date |

| | |
|---|---|
| **Hearing Date:** 02/09/2018 | **Hearing Type:** Annual |
| **Committee Type:** Institution Cls. Committee (UCC) | **Correctional Counselor:** A. Shaw |

**STATIC CASE FACTORS**

**CRITICAL CASE FACTORS**

**CLINICIAN COMMENTS**

## COMMITTEE ACTION SUMMARY

Action: Retain ISP-III SNY, CPP. Permanently excluded from level I or level II facilities per CCR 3375.2 (a)(7). Double Cell Clear. Lifer is on the BPH calendar for a sub #11 hearing on 04/27/2021.

## COMMITTEE COMMENTS

DUE PROCESS: Inmate Ezell appeared in absentia (waived 72 hours' notice) on this date for ISP's Unit Classification Committee (UCC) for an Annual review. The inmate was notified of committee review via the CDCR 128B-1 dated 2/9/18.

A review of the Disability and Effective Communication System indicates he has a reading level of 12.9. Effective communication: Effective communication was established. asked appropriate questions, reiterated in his own words what was explained & stated that he understood. He was able to clearly articulate a response in his own words in a manner that demonstrated that no accommodation for effective communication was necessary. Ezell stated he does not need a staff assistant.

Case Factors: Ezell is Medium (A)/R with a classification score of 0 but mandatory minimum of 19 serving two life sentences for the offense(s) of: Murder 1st; however per CSR dated 6/24/13, Ezell has been deemed a serial killer and is permanently excluded from level I or level II facilities per CCR 3375.2 (a)(7). These case factors are within level III placement and the inmate is not requesting a transfer at this time; therefore retain ISP-III SNY, CPP.

Annual Review Periods: This review period covers 2 review periods from 02/01/2017 thru 01/31/2018. Preliminary Score is mandatory minimum of 19 points. Inmate had (2) qualifying disciplinary free periods and (2) qualifying positive work performance periods.

Additional Case Factors: The Confidential Separation Alert is clear. The confidential section is clear. The Non Confidential Offender Separation is clear. The non-confidential unable to identify enemy is clear. COMPAS completed on 2/26/16. Ezell has CSRA score of 1. Ezell is ineligible for family visits. Ezell is not a foreign born national. Next BPH hearing consultation: 04/27/2021. Archive review: 897379 archive is no longer available (See 128B dated 2/11/14). Arson offenses: Noted, Computer Crimes: None, Hold: none, Sex Offense: Noted, Escape concerns: Noted Ezell does not meet the criteria for Close Custody. 128 B6 dated 6/24/13. 128 B SNY dated 8/27/13

MCC dated 03/22/2017 reflects: Proximity to Consult: no particular need. Functional Capacity: Full Duty. Medical Risk: Medium risk. Nursing Care Acuity: basic nursing. Disability Concerns: none. DPP: none. Psych concerns are clear per CDC 128C/SOMS dated 03/07/2017 and DDP= (NDD excluded from DDP) per 128C-2 dated 4/22/2011. TB code 92 dated 03/22/2017. Restricted Cocci Area 2. Ground Floor-Limited Stairs; Lower/Bottom Bunk Only. DME: Canes.

HOUSING ASSIGNMENT: Committee notes that the inmate has no documented history of in-cell sexual abuse, assaultive, violent, or predatory behavior toward any cell partner that would preclude the inmate from double cell housing. Inmate is not currently experiencing any problems as a result of having a cellmate. The inmate's integrated housing code is RE. The inmate was also questioned relative to the Prison Rape Elimination Act (PREA). He indicated that no new information has come to light since his intake interview. He further indicated he had no abusiveness/victimization concerns to report.

Prison Rape Elimination Act (PREA): As part of the inmate's Annual Review, the inmate participated in the completion of the PREA Screening tool at ISP, which included a review of all available documentation in SOMS and ERMS and a face to face interview. During the Annual Review, the chairperson reviewed the completed PREA Screening tool with the inmate and asked the inmate if he had any relevant information that should be considered for future housing and/or program/work assignments. The inmate stated: He has no additional information to provide therefore the committee chairperson took no action. PREA Assessment Form Completed: 2/9/18

**RECORDER**

①

| A. Shaw | | 02/09/2018 |
| | | Date |

**CHAIRPERSON**

| K. Cunningham | | 02/09/2018 |
| | | Date |

CDCR SOMS ICCT162 - Classification Committee Chrono



CDCR SOMS ICCT162 - CDC NUMBER: C27124 NAME: EZELL, EDDIE L.       Page 2 of 2

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY

Institution/Parole Region: Log #: ISP-B-17-00328   Category 2

FOR STAFF USE ONLY

1705520   C27124

You may appeal any ~~policy~~ and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Ezell Eddie | C-27124 | B3-237 | 3/w YARD |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

CLASSIFICATION STATUS

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): I AM being
placed in Continuous Adverse Situations, My Due
Process Rights Violated And Continuously being
Unfairly And Wrongly Classified by Committee's

B. Action requested (If you need more space, use Section B of the CDCR 602-A): That I be Pe-
Rally Classified; That The Mandatery Classifikation
Score of 19 be dropped if NOT TO O AS IT Should
be, So That I AM Atleast Able To Transfer To

Supporting Documents: Refer to CCR 3084.3.

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g. CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

Classification Comm. Chrono

☐ No, I have not attached any supporting documents. Reason :

Inmate/Parolee Signature: Eddie Ezell          Date Submitted: 3/28/17

E.E. By placing my initials in this box, I waive my right to receive an interview.

ISP
MAR 29 2017
APPEALS OFFICE

REC BY OCA
MAR 27 2017

C. First Level - Staff Use Only          Staff – Check One: Is CDCR 602-A Attached? ☒ Yes   ☐ No

This appeal has been:
☒ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter)  Date:
☐ Accepted at the First Level of Review.

Assigned to: ____ Title: ____ Date Assigned: ____ Date Due: ____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: ____ Interview Location: ____

Your appeal issue is: ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: ____

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: ____ (Print Name)   Title: ____ Signature: ____ Date completed: ____

Reviewer: ____ (Print Name)   Title: ____ Signature: ____

Date received by AC: ____

AC Use Only
Date mailed/delivered to appellant ____ / ____ / ____

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)
Side 2

**D. If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.**

BYPASS

Inmate/Parolee Signature: _____  Date Submitted: _____

**E. Second Level - Staff Use Only**   Staff – Check One: Is CDCR 602-A Attached? ☒ Yes ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☒ Accepted at the Second Level of Review

Assigned to: _JM Hernandez_   Title: _____  Date Assigned: _4/5/17_   Date Due: _5/11/17_

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _4/14/17_   Interview Location: _B Facility Program_

Your appeal issue is: ☐ Granted ☒ Granted in Part ☐ Denied ☐ Other: _____
See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: _PSC.R.O_   Title: _CCI (A)_   Signature: _____  Date completed: _4/13/17_

Reviewer: _BW SMITH_   Title: _CDW (A)_   Signature: _____

Date received by AC: _MAY 0 4 2017_

**AC Use Only**
Date mailed/delivered to appellant _MAY 0 4 2017_

**F. If you are dissatisfied with the Second Level response, explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.**

IT IS A CLEAR VIOLATION OF DUE PROCESS TO PUNISH A PER-
SON FOR AN OFFENSE OR OFFENSE'S OF WHICH HE WAS
NIETHER TRIED OR CONVICTED OF (COLE V. ARKANSAS
(1948) 333 U.S. 196), UNTIL MY COMMITMENT OFFENSE
I WAS NEVER CONVICTED OF MURDER AND MY COMMITMENT

Inmate/Parolee Signature: _Eddie Engel_   Date Submitted: _5/17/17_

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: _____
See attached Third Level response.

**Third Level Use Only**
Date mailed/delivered to appellant _JUL 2 1 2017_

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because: State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: _____  Date: _____

Print Staff Name: _____  Title: _____  Signature: _____  Date: _____

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| | IAB USE ONLY | Institution/Parole Region: | Log #: | Category |
|---|---|---|---|---|
| 1705520 | | JSP-B-17-00328 | 2 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Ezell Eddie | C-27124 | B3-237 | 3/W Yard |

A. Continuation of CDCR 602, Section A only (Explain your issue): USING UNCHARGED, UNTRIED, UNPROVEN, AND UNCONVICTED Crimes. MY COMMITMENT OFFENSE IS (2) COUNTS FIRST degree MURDER TO RUN CONCURRENT. I HAVE NEVER HAD AN ESCAPE. I WAS NOT Charged OR Convicted of ARSON, AND THERE ARE NO RAPE CHARGES CONNECTED TO MY COMMITMENT OFFENSE. The COMMITTEES CONTINUE TO RELY ON A PROBATION OFFICERS REPORT AND OTHER DOCUMENTS THAT WERE AUTHORED AND SUBMITTED IN VIOLATION OF PENAL Codes 118.1 AND 134 by The DISTRICT ATTORNEY AND The Lead INVESTIGATOR. THERE IS NO TRUE BASIS FOR ME TO be CLASSIFIED UNDER SUBSECTION 3377 (A)(B) OR (C).

Inmate/Parolee Signature: Eddie Ezell    Date Submitted: 3/28/17

B. Continuation of CDCR 602, Section B only (Action requested): CIM-EAST LEVEL II CELL LIVING SO THAT I CAN ONCE AGAIN SEE MY PARENTS THAT I HAVENT SEEN IN 3 YEARS because They CANT TRAVEL SO FAR ANY MORE.

Inmate/Parolee Signature: Eddie Ezell    Date Submitted: 3/28/17

D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response): Offense consist of two counts of first degree murder both of which occurred in July of 78 at the same time. It has never been proven in a court of law, nor have I ever been convicted of any other murders

BYPASS

Inmate/Parolee Signature: _____     Date Submitted: _____

F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response): OFFENSE CONSIST OF TWO COUNTS OF FIRST DEGREE MURDER. Both murders occurred on the same day in July of 1978. It has never been proven in a court of law, nor have I ever been convicted of any other murder. Therefore, how can I be classified as a serial killer and be denied the right to be placed in a level II institution closer to my parents? CIM - EAST cell living would be ideal and should available to me. It continues to puzzle me how I can be considered too dangerous for a level II but not too dangerous to be double-cell qualified instead of single-cell status.

Inmate/Parolee Signature: Eddie Egbell     Date Submitted: 5/17/17

⑫

**INMATE APPEAL ROUTE SLIP**

To: AW PROGRAMS                                  Date: April 5, 2017

From:  INMATE APPEALS OFFICE

Re: Appeal Log Number  ISP-B-17-00328  By Inmate  EZELL, C27124

Please assign this appeal to appropriate staff for SECOND level response.

Appeal Issue: CUSTODY/CLASS.
Due Date:  05/11/2017
Special Needs:

STAFF INSTRUCTIONS:
Second level appeals require a personal interview if not afforded at the first level. Begin your response with:  GRANTED,  DENIED,  PARTIALLY  GRANTED  or WITHDRAWN. When complete, return to Appeals Office. Appeals that are incomplete will be returned to the responding staff for appropriate completion. Refer to D.O.M. 54100 for instructions.


  W. McCullough III
  Appeals Coordinator
  Ironwood State Prison



STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    EDMUND G. BROWN JR., GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
IRONWOOD STATE PRISON
P.O. Box 2229
Blythe, CA 92226

April 14, 2017

Appellant: Ezell, Eddie L.
CDCR #:  C27124
Housing: BFB3-237L
Ironwood State Prison
P.O. Box 2199
Blythe, CA. 92226

Mr. Ezell,

### SECOND LEVEL APPEAL RESPONSE LOG #ISP-B-17-00328

#### SUMMARY OF APPEAL
You are appealing the issue of Classification.  You alleged that committee's decision continuously places you in adverse situations, your due process rights are being violated, and that you are continuously being unfairly and wrongly classified by committees using untried and unproven crimes.   You state that your commitment offense is two counts of 1st Degree Murder to run concurrent and that you never had an escape, not charged or convicted of arson, and that there are no rape charges connected to your commitment offense. You further state that there is no basis for you to be classified under California Code of Regulations (CCR) Section 3377(a), (b), or (c) due to committee's continued reliance on a probation officer's report and other documents submitted in violation of PC118.1 and PC134. by the District Attorney and Lead Investigator.

You are requesting for you to be properly classified, that the mandatory classification score of 19 be dropped so that you may be able to transfer to CIM-East level II so that can see your parents whom you have not seen in 3 years due to their inability to travel.

#### EFFECTIVE COMMUNICATION
Was additional assistance required to achieve effective communication?   ☐ Yes
☒ No.  You are not a participant in the Mental Health Services Delivery System requiring additional means of effective communication. Simple English was utilized to establish effective communication.  You have no physical disabilities which would preclude you from being able to communicate your concerns in an interview without assistance. You also have a reading TABE score of 12.9. The reviewer is satisfied you have a good understanding of the appeal issues and are able to communicate with the interviewer. Effective communication has therefore been achieved.

Appellant: Ezell, Eddie L.
CDCR # : C27124
Second Level Appeal Response
Log #: ISP-B-17-00328
Page 2 of 3

**SUMMARY OF INQUIRY**
A thorough inquiry has been conducted for this response. You were interviewed by me, Facility 'B' Correctional Counselor II (A), P. Friend, on April 14, 2017, in my office located in B Facility Program Office. During this interview, you related essentially the same information you provided in your written appeal.

Your appeal was **bypassed** at the First Level. The following items were reviewed for this response: your Initial Appeal, its attachment, the Electronics Management System (ERMS), the Strategic Offenders Management System (SOMS) and the pertinent statutes and regulations defined by the CCR, Title 15 and the Departmental Operations Manual.

A review of SOMS indicates your case factors were reviewed by Unit Classification Committee (UCC) on February 28, 2017 and the Committee elected to retain you at ISP-III SNY. You waived your right to be present in committee and signed your 128-B1 Notice of Classification Hearing Form where in which it's documented that you would be retained at ISP-III SNY, Continue Present Program (CPP). Additionally, the notice documents you are excluded from placement at a level I or II facility per 3375.2(a)(7). Furthermore, the transfer portion of the CDCR 128G Classification Chrono dated February 28, 2017 does not indicate that you requested a transfer.

As stated above you indicated in your appeal that "there is no true basis for me to be classified under subsection 3377(A)(B) or (C)". CCR Title 15, Section 3377 (a) through (c) states, "*Each camp, facility, or area of a facility complex shall be designated at a security level based on its physical security and housing capability. Reception centers are not facilities of assignment and are exempt from the security level designations except for the assignment of permanent work crew inmates. The security levels are: (a) Level I facilities and camps consist primarily of open dormitories with a low security perimeter. (b) Level II facilities consist primarily of open dormitories with a secure perimeter, which may include armed coverage. (c) Level III facilities primarily have a secure perimeter with armed coverage and housing units with cells adjacent to exterior walls.*" This subsection of Title 15 does not apply to your case factors; therefore, you are not classified under subsection 3377(a), (b), or (c).

The committee's decision as noted in the chrono was to retain you at ISP-III SNY based on Auditor Action dated June 24, 2013, endorsing you to ISP-III SNY with a classification score of 19. The Auditor action dated June 24, 2013 notes Institutional Classification Committee (ICC) action dated May 7, 2013 where in which you were deemed a Serial Killer pursuant to CCR, Title 15, Section 3375.2(a)(7). CCR, Title 15, Section 3375.2(a)(7) states "*An inmate identified as a serial killer shall be excluded from Level I or Level II placement even if his or her convictions for murders are prosecuted separately*". As a result, the Administrative Determinate VIO was affixed with a mandatory minimum placement score of 19.



Appellant: Ezell, Eddie L.
CDCR # : C27124
Second Level Appeal Response
Log #: ISP-B-17-00328
Page 3 of 3

**APPEAL RESPONSE**

For the reasons stated above, your appeal is **PARTIALLY GRANTED**, noting you have been properly classified under CCR Title 15, Section 3375.2(a)(7); therefore your request to not be classified under CCR, Title 15, Section 3377(a), (b), or (c) has been granted. The UCC conducted on February 28, 2017, acted within policy and procedure resulting in a classification score of (19) due to Administrative Determinant VIO (Serial Killer), thus your request to have your classification score lowered below (19) is denied. Because your case factors meet the criteria of CCR, Title 15, Section 3375.2(a)(7) you are not eligible for transfer to a level I or II SNY Facility.

If you are dissatisfied with the Second Level of Response, complete Section F of the CDCR 602. Explain reason; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail all documents to Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, PO Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

Sincerely,

P. FRIEND
Correctional Counselor II (A)
Ironwood State Prison

R. W SMITH
Chief Deputy Warden (A)
Ironwood State Prison



STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P.O. BOX 942883
SACRAMENTO, CA 94283-0001

## THIRD LEVEL APPEAL DECISION

Date:   JUL 2 0 2017

In re:   Eddie Ezell, C27124
Ironwood State Prison
P.O. Box 2229
Blythe, CA 92226

TLR Case No.: 1705520          Local Log No.: ISP-17-00328

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Vila, Staff Services Manager I. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that he is inappropriately classified. The appellant states that he is being placed in continuous adverse situations and his due process rights are being violated. The appellant states that there is no basis for him to be classified under California Code of Regulations, Title 15, Section (CCR) 3377(a), (b), or (c) due to committee's continued reliance on a Probation Officer's Report and other documents submitted in violation of California Penal Code Section (PC) 118.1 and PC 134, by the District Attorney and Lead Investigator.

The appellant requests that he be properly classified. The appellant requests that the mandatory classification score of 19 can be dropped so that he may be able to transfer to California Institution for Men so he can see his parents who he has not seen in three years due to their inability to travel.

**II   SECOND LEVEL'S DECISION:** The reviewer found that there was basis to grant the appeal in part. The Second Level of Review (SLR) reviewed the Strategic Offender Management System (SOMS) which indicated the appellant's case factors were reviewed by the Unit Classification Committee (UCC) on February 28, 2017, and the UCC elected to retain him at the Ironwood State Prison (ISP) Sensitive Needs Yard (SNY). The SLR noted the appellant waived his right to be present in committee and signed his CDC Form 128-B1, Notice of Classification Hearing where in which it was documented that he would be retained at ISP. Additionally, the CDC Form 128-B1 documented the appellant is excluded from placement at a Level-I or Level-II Facility pursuant to CCR 3375.2(a)(7). Furthermore, the transfer portion of the CDC Form 128-G, Classification Chrono, dated February 28, 2017, did not indicate the appellant requested a transfer.

CCR 3377 states in part: "Each camp, facility, or area of a facility complex shall be designated at a security level based on its physical security and housing capability. Reception centers are not facilities of assignment and are exempt from the security level designations except for the assignment of permanent work crew inmates. The security levels are: (a) Level I facilities and camps consist primarily of open dormitories with a low security perimeter. (b) Level II facilities consist primarily of open dormitories with a secure perimeter, which may include armed coverage. (c) Level III facilities primarily have a secure perimeter with armed coverage and housing units with cells adjacent to exterior walls." The SLR noted that this subsection of the CCR does not apply to the appellant's case factors; therefore, he is not classified under subsection 3377.

The SLR noted that the UCC's decision to retain the appellant at the ISP was based on the Auditor Action, dated June 24, 2013, endorsing the appellant to ISP with a classification score of 19. The Auditor Action, dated June 24, 2013, noted the Institution Classification Committee action dated May 7, 2013, wherein the appellant was deemed a Serial Killer pursuant to CCR 3375.2(a)(7). CCR 3375.2(a) states in part: "(7) An inmate identified as a serial killer shall be excluded from Level I or Level II placement even if his or her convictions for murder are prosecuted separately." As a result, the VIO administrative determinant was affixed with a mandatory minimum placement score of 19.

The SLR partially granted the appeal in that the appellant was properly classified under CCR 3375.2(a)(7); therefore, the appellant's request not to be classified under CCR 3377(a), (b), or (c) was granted by the SLR. The SLR noted the UCC hearing conducted on February 28, 2017, acted within policy and procedure



EDDIE EZELL, C27124
CASE NO. 1705520
PAGE 2

resulting in a classification score of 19 due to the VIO administrative determinant (Serial Killer), thus the appellant's request to have his classification score lowered below 19 was denied by the SLR. The SLR noted that the appellant's case factors meet the criteria for CCR 3375.2(a)(7) and he is not eligible for transfer to a Level-I or Level-II SNY Facility. Based on the aforementioned, the SLR granted the appeal in part.

**III  THIRD LEVEL DECISION:**  Appeal is denied.

    **A.  FINDINGS:**  The documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification in the SLR. The SLR clearly outlined the guidelines and regulations by which the institutions and the department must comply. The examiner finds the appellant's request for his classification score of 19 to be dropped was appropriately denied by the SLR. The examiner finds the appellant's classification score was appropriately assigned pursuant to CCR 3375.2. The SLR partially granted the appeal in that the appellant was properly classified under CCR 3375.2(a)(7); therefore, the appellant request not to be classified under CCR 3377(a), (b), or (c) was granted by the SLR. The examiner finds the appellant has been appropriately classified and is appropriately housed pursuant to CCR 3375. The examiner concurs with the SLR. No relief at the Third Level of Review is warranted.

    **B.  BASIS FOR THE DECISION:**
CCR: 3084.1, 3375.2, 3377

    **C.  ORDER:**  No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

J. VILA, Appeals Examiner
Office of Appeals

M. VOONG, Chief
Office of Appeals

cc:    Warden, ISP
       Appeals Coordinator, ISP



# EXHIBIT "C"

EXHIBIT "C"

STATE OF CALIFORNIA

### PETITION TO ADVANCE DECISION FORM
AUTHORITY: PC §3041.5(d)

| PETITION TO ADVANCE INFORMATION | | |
|---|---|---|
| Date Petition Postmarked: | December 26, 2017 | Date Petition Received: January 3, 2018 |
| Date of last Petition decision (ROM): | November 10, 2014 | |

| Inmate Name: | EZELL, EDDIE,LEE |
|---|---|
| CDCR Number: | C27124 |
| Institution: | Ironwood State Prison |

## BPH DECISION

### JURISDICTIONAL REVIEW

[ ] BPH does not have jurisdiction.

    [ ] The next hearing type may not be advanced.

    [ ] Insufficient time has passed since the previous Review on the Merits decision.

    [ ] Inmate is scheduled to be released within 12 months of the date the petition was received.

[X] BPH has jurisdiction.

    [X] Review on the Merits Ordered.

    [ ] Review on the Merits NOT Ordered.

        [ ] Inmate's next parole suitability hearing is within 7 months of BPH received date.

        [ ] Inmate's petition was incomplete (returned to inmate without prejudice).

        [ ] Inmate's petition was not related to the petition to advance process.

*Anne M. Cervantes*            **January 19, 2018**

| SIGNATURE | REVIEW DATE |
|---|---|

CERVANTES, ANNE

| NAME |
|---|



       1 of 2

## PETITION TO ADVANCE DECISION FORM
AUTHORITY: PC §3041.5(d)

| REVIEW ON THE MERITS |
|---|

☐ Petition approved, advance next parole suitability hearing to next available calendar. Once the hearing is scheduled, the inmate will be notified.

☐ Petition approved, advance next parole suitability hearing from  to  years after previous hearing. Once the hearing is scheduled, the inmate will be notified of the new date.

☒ Petition denied.

Decision based on the reasons stated below.

On 4/27/2016, at the 10th suitability hearing, the Board of Parole Hearings' Panel determined the inmate (EDDIE LEE EZELL-C27124) was not suitable for parole for a period of 5 years. On 1/3/2018, the Board of Parole Hearings received inmate's petition to advance his next suitability hearing to an earlier date pursuant to PC3041.5(d)(1).

PC3041.5(d)(2) directs the Board of Parole Hearings (Board) to review an inmate's petition to advance and supporting information to determine whether there is a change in circumstance or new information establishing a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration set in the current denial length.

The prior panel's transcript notes the inmate was not suitable for parole for a period of 5 years, in part, because they had concerns about (i) the nature of the commitment offenses, (ii) about his insight into the underlying causative factors of his criminality, (iii) about his insight into his anger and how it related to the victims of the commitment offense, (iv) his lack of insight into domestic violence and his interaction with women and its connection to the commitment offenses, (v) his superficial understanding of his mindset and the lack of skillsets and coping mechanisms to abate this mindset, and (vi) about his remorse. They recommended the inmate should participate in programs like victim awareness, victim impact and further explore anger and anger management.

In his petition to advance, inmate requests his next hearing be advanced for the following reasons: (i) every prior denial decision was unfair and biased; (ii) denials were based on false crimes, evidence, and facts; and (iii) he has continually been deprived of his constitutional rights afforded under the fifth and fourteenth amendments of the United States Constitution. Included were prior risk assessments, the decision portions of prior hearing transcripts from 1992, 1994, 1996, 2001, 2013 and 2016, and other documents supporting his reasons for advancement.

Also, a review of the central file indicates he has not incurred a serious rules violation or a counseling chrono since his last suitability hearing. He works as a yard worker. Since his last hearing, he was also identified as a youth offender pursuant to PC3051. However, there is nothing in the record to show the inmate has participated in rehabilitation programs to address the prior panel's concerns.

After reviewing the prior hearing panel's transcript, the documents the inmate submitted and his central file, it is determined the inmate does not meet the standard to advance his next hearing to an earlier date. Although, the inmate has not incurred any rules violations or counseling chronos since his last hearing and was identified as a youth offender pursuant to PC3051, these circumstances are not sufficient to show a change in circumstance or new information. The inmate does not appear to be addressing the prior panel's concerns.

Decision.
For the reasons stated above and the discretion afforded under PC3041.5(d)(2), the Board will not advance the inmate's next suitability hearing.

_[signature]_

**January 22, 2018**

SIGNATURE

REVIEW DATE

DESAI, VIJAY

NAME

BPH 1045 (C) (Rev. 10/20/2014)

2  of  2

BOARD OF PAROLE HEARINGS                                    STATE OF CALIFORNIA
DECISION PROCESSING AND SCHEDULING UNIT
P.O. BOX 4036
SACRAMENTO, CA  95812-4036

# PETITION TO ADVANCE HEARING DATE

YOU CAN GET HELP FILLING OUT THIS FORM BY ASKING YOUR CORRECTIONAL COUNSELOR.

INMATE NAME: Eddie Ezell

CDCR NUMBER: C-27124          INSTITUTION: IRONWOOD

Inmates sentenced to a life term can request to advance their next parole suitability hearing by filling
out this form (called a petition) and mailing it to the Board of Parole Hearings at the address above.
You may submit an initial petition any time after your first parole suitability hearing. After that, you
may not submit a subsequent petition until a three (3) year period of time has elapsed since the
decision by the board on your earlier petition. Nor may you submit a petition to advance a
documentation hearing, initial suitability hearing, progress hearing or medical placement hearing. Also,
if there are any registered victims or next of kin they will be notified of your petition and upon request,
a copy will be given to them for their review and comments. Finally, your petition will be granted if it
meets the requirements above and a change in circumstances or new information establishes a
reasonable likelihood that consideration of the public safety does not require an additional period of
incarceration. Please describe the change in circumstances or new information that you believe will
support your petition in the space below and on the backside of this form. You may attach additional
supporting documentation to this petition but only attach copies – not originals; your petition and
supporting documentation will not be returned to you. However, once your petition is received you
may not send additional information to include in your petition.

DO NOT STAPLE OR BIND YOUR PETITION AND SUPPORTING DOCUMENTATION.

PETITIONER'S HEARING SHOULD BE ADVANCED BASED ON THE FOLL-
OWING FACTS AND EVIDENCE PROVING THAT "EVERY" PRIOR BOARD
OF PRISON TERMS (BPT) AND BOARD OF PAROLE HEARINGS (BPH) (1984-
2016) DECISION'S TO DENY PAROLE WERE VERY UNFAIR, BIASED AND
GREATLY BASED AND DEPENDENT UPON FALSE CRIMES, EVIDENCE, FACTS
, STATEMENTS AND DOCUMENTS PRODUCED AND SUBMITTED BY REPRE-
SENTATIVES OF THE STATE IN VIOLATION OF PENAL CODES § 118(A)
PERJURY IN A CRIME REPORT, § 118.1 FALSE STATEMENTS IN A CRIME
REPORT; § 134 FALSE DOCUMENTS PRODUCED FOR FRAUDULENT AND
DECEITFUL PURPOSE (EXH'S. 3 AND ANY SUPPORTING THEORIES AND DIAGRAMS)
AND HAS IMPOSED ON PETITIONER (OVER) [YOU MAY CONTINUE ON THE BACK SIDE]

INMATE SIGNATURE: Eddie Ezell                    DATE: 12/26/2017

BPH Form 1045-A Part 1 (Rev. 3/13)                    ③

ATYPICAL AND SIGNIFICANT HARDSHIP IN RELATION TO OTHER LIFE
PRISONER PAROLE HEARING'S, OR OTHER ORDINARY INCIDENTS OF PRISON
LIFE, AND ENCROACHES UPON A LIBERTY INTEREST UNDER THE DUE
PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE
U.S. CONSTITUTION SANDIN V. CONNER, 515 U.S. 472, 481-84 (1995),
"EVERY" BOARD PANEL AND "EVERY" PSYCHOLOGICAL DIAGNOSIS, AND ESP-
ECIALLY "EVERY" FORENSIC ASSESSMENT DIAGNOSIS (FAD) THAT HAS BEEN
HEAVILY RELIANT, OR GREATLY BASED ON THE AFORE MENTIONED FALSE
AND FRAUDULENT DOCUMENTS, EVIDENCE AND CRIMES WAS/IS VERY UNFAIR
, PREJUDICE, ARBITRARY, FALSE, MALICIOUS AND INJURIOUS TO PETITIONER
AND HAS PRODUCED VERY ADVERSE, CONTRARY, AND UNREASONABLE DE-
CISIONS AND EVALUATIONS (EXH'S. 4 AND 5). PETITIONER'S COMMITMENT
OFFENSE IS TWO COUNTS OF FIRST DEGREE MURDER OF ANITA LEE
AND DEBRA JONES (EXH. 2:10); (ALTHOUGH NOT CONVICTED OF PETITIONER
HAS CONSISTENTLY TAKEN RESPONSIBILITY FOR THE THIRD VICTIM OF COMMITMENT
OFFENSE NICOLE LEE). HOWEVER, "EVERY" BPT-BPH DECISION TO DENY
PAROLE HAS BEEN UNREASONABLY, GREATLY, HARMFULLY AND PREJUDICIALLY
RELIANT UPON THE RAPE OF ANITA LEE (THERE WAS NO RAPE COMMITTED ON
ANITA LEE EXH'S. 1 AND 5:13) AND THAT PETITIONER FIRST MURDERED
ANITA LEE, LEFT FOR TWO HOURS, THEN CAME BACK TO MURDER DEBRA
JONES AND NICOLE LEE (THIS NEVER HAPPENED EXH. 2:7) WHICH IS JUST A
COUPLE OF THE VERY HARMFUL, UNLAWFUL AND CONTRADICTORY FACTS, STATE-
MENTS, CRIMES, THEORIES AND PIECES OF EVIDENCE PRODUCED AND SUB-
MITTED BY THE DISTRICT ATTORNEY AND LEAD INVESTIGATOR (EXH. 4 AND
SUPPORTING THEORIES AND DIAGRAMS), NAPUE V. ILLINOIS 360 U.S. 264 (1959)
"EVERY" PSYCHOLOGICAL DIAGNOSIS RELIANT UPON THE FALSE AND FRA-
UDULENT CRIMES, EVIDENCE AND DOCUMENTS; "ESPECIALLY" EVERY "FAD
EVALUATOR'S WHO PERSISTENTLY AND ASSERTIVELY TAKE EVERY FACT,
THEORY, DIAGRAM, DOCUMENT, CRIME AND PIECE OF EVIDENCE OFFERED
BY THE DISTRICT ATTORNEY AND LEAD INVESTIGATOR AS UNDENIABLY
TRUE AND INFALLIBLE (EXH. 5) HAS GREATLY, UNFAIRLY, PREJUDICIALLY
, FALSELY, ARBITRARILY, AND HARMFULLY MISDIAGNOSED, DEBASED, DE-
FAMED AND CRITICIZED PETITIONER FOR CLAIMING INNOCENCE OF EVERY
CRIME BUT THE COMMITMENT OFFENSE AND FOR QUESTIONING THE MANY
FALSE AND CONTRADICTORY FACTS, PIECES OF EVIDENCE, THEORIES AND
STATEMENTS PRODUCED AND OFFERED BY THE DISTRICT ATTORNEY AND LEAD
INVESTIGATOR (EXH. 4 AND 5). PETITIONER WAS CONVICTED OF RAPE IN 1973
, ATTEMPTED RAPE 1976 (DID NOT COMPLETE THE ACT BY CHOICE), HAS "NO OTHER"
CONVICTION FOR A SEX CRIME DESPITE BEING IN FREE SOCIETY FOR TWO YEARS
AFTER ATTEMPT RAPE PROBATION SENTENCE, IN FACT COMMITTED NO CRIME
UNTIL COMMITMENT OFFENSE 1978, YET, "EVERY" PSYCHOLOGICAL REPORT

BOARD OF PAROLE HEARINGS
DECISION PROCESSING AND SCHEDULING UNIT
P.O. BOX 4036
SACRAMENTO, CA 95812-4036

STATE OF CALIFORNIA

---

**DO NOT STAPLE OR BIND YOUR PETITION AND SUPPORTING DOCUMENTATION.**

AND FAD EVALUATION HAS DIAGNOSED PETITIONER AS A SERIAL RAPIST – SERIAL MURDERER AND STRONGLY, ASSERTIVELY AND INSISTENTLY OPINIONED THAT PETITIONER IS VERY HIGH RISK TO RE-OFFEND SEXUALLY AND VIOLENTLY, AND WHEN PETITIONER QUESTIONS THE BPH OR PSYCHOLOGIST OR FAD OF THOSE DIAGNOSIS OR WHATEVER-DENCE PROVES THIS THEORY HE IS SIMPLY TOLD THAT HE HAS NO INSIGHT, REMORSE AND THE EVIDENCE AND FACTS OF THE PROBATION OFFICER'S REPORT IS THE PROOF (EXH's. 4 AND 5). THE ONLY TRUTH IS THAT PETITIONER HAS UNFAIRLY, UNJUSTLY, ARBITRARILY, EGREGIOUSLY, AND FALSELY BEEN DENIED PAROLE, PSYCHOLOGICALLY DIAGNOSED AND EVALUATED, PUNISHED AND FALSELY AND ADVERSELY JUDGED FOR RAPES AGAINST DEBRA JO NEWTON AND ANITA LEE THAT WERE NEVER A CHARGE OR EVEN HAPPENED. A RAPE ON BETTY COOKE AND BURGLARY OF HER RESIDENCE WAS DISMISSED BY A COURT OF LAW (EXH. 1:2-4). THERE WAS NO TWO HOUR SPACE BETWEEN THE MURDER'S OF THE COMMITMENT OFFENSE (EXH. 2:7). THE TRUTH IS THAT THE PROBATION OFFICER'S REPORT, DIAGRAMS, THEORIES, STATEMENTS, FACTS AND EVIDENCE PRODUCED, AND SUBMITTED BY THE DISTRICT ATTORNEY AND LEAD INVESTIGATER WERE A DIRECT AND MALICIOUS RESULT OF UNLAWFUL ACTS AND UNLAWFUL CONDUCT COMMITTED UNDER COLOR OF LAW AND UNDER THEIR AUTHORITY AS STATE REPRESENTATIVES OF LAW AND AS A DIRECT AND PROXIMATE RESULT PETITIONER IS CONTINUALLY BEING DEPRIVED OF HIS RIGHTS SECURE UNDER THE FIFTH AND FOURTEENTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES", ARTICLE 1 §§ 7 AND 13 (OVER)

---

**TO BE COMPLETED BY CDCR STAFF IF HELP WAS REQUESTED.**

DECS Reviewed?      YES [ ] NO [ ]          Accommodation Given?      YES [ ] NO [ ]
Describe any accommodation(s): _____

Describe any other assistance: _____
_____
_____

STAFF SIGNATURE: _____     DATE: _____
Name/Title of CDCR staff: _____

BPH Form 1045-A Part 1 (Rev. 3/13)                    ⑤

(2006); DOW V. VIRGA 729 F. 3D 1041, 47-49 (2013)). PLEASE, CONSIDER THAT WITHOUT THE CRIMES, EVIDENCE THAT PETITIONER IS ACTUALLY AND FACTUALLY INNOCENT OF, OR ALL OF THE FALSE, ALTERED, CONTRADICTARY, FABRICATED AND CORRUPTED FACTS, STATEMENTS, THEORIES AND DOCUMENTS THAT CREATED THE FALSE FAD EVALUATION'S AND OPINIONS, THE BPH PANEL POSSIBLY WOULD HAVE GRANTED PAROLE (SEE 4-27-2016 DECISION). I HAVE BEEN INCARCERATED SINCE I WAS 24 YEARS OLD AND WILL BE 64 YEARS OLD IN A FEW MONTHS. I AM NO THREAT TO ANYONE IN ANYWAY. I HAVE DONE MY BEST TO MAKE AMENDS AND CONTINUE TO DO SO AND BE A SOLID AND LAW ABIDING CONTRIBUTOR TO SOCIETY IF GIVEN A CHANCE. ALL I WANT IS TO BE THERE FOR MY AGING PARENTS. THANK YOU!

| SUPPORTING DOCUMENTS | |
|---|---|
| 1 | ORIGINAL CHARGED CRIMES | 1-7 |
| 2 | SENTENCING TRANSCRIPT | 1-10 |
| 3 | PROBATION OFFICER'S REPORT | 1-16 |
| 4 | PRIOR BPT-BPH DECISIONS (1984-2016) | 1-67 |
| 5 | FAD EVALUATIONS (2015/2012/2009) | 1-44 |

6

```
 1              CALIFORNIA BOARD OF PAROLE HEARINGS
 2                       D E C I S I O N
 3       DEPUTY COMMISSIONER POMERANTZ:  On the record.
 4       PRESIDING COMMISSIONER ROBERTS:  We're back on
 5  the record.  And this is in the matter of Eddie Lee
 6  Ezell, E-Z-E-L-L, CDC number C-27124.  Today's date is
 7  April the 27th, 2016.  Time is approximately 11:10 a.m.
 8  All the parties previously in the room have returned to
 9  the room again.  And we're here for the pronouncement of
10  the Panel's decision.  By way of a decision and finding,
11  the Panel finds you not suitable for parole today, sir.
12  By way of background, the Panel finds that you were
13  received by the California Department of Corrections and
14  Rehabilitation on or about February the 27th, 1981 from
15  the County of Los Angeles.  And the controlling offense
16  in this case is a double First Degree Murder and
17  resulted in two life terms to run concurrent with each
18  other.  You have a minimum eligible parole date of
19  February the 10th, 1984, and your life term did start on
20  February 27th, 1981.  The victims in this case were
21  Anita Lee, 25 years old; Nicole Lee, five years old; and
22  Deborah Jones, 13 years old.  In this case, the Panel
23  has read and considered the written record before us
24  including prior Board Reports, the current Progress
25  EDDIE EZELL      C-27124      DECISION PAGE 1      4/27/16
```

INMATE COPY

Northern California Court Reporters

1   Reports, the Central File, of course, the Comprehensive
2   Risk Assessment.  We also looked at past Risk
3   Assessments and additional documents discussed on the
4   record today.  There were a couple of certificates that
5   you provided that we did not have in the record that
6   were helpful.  The Panel wishes to incorporate the
7   following documents into the record in their entirety,
8   the first being the Probation Officer's Report.  The
9   Probation Officer's Report was particularly helpful.  In
10  absence of a Appellate Court Opinion, we relied upon it
11  to tell us what the life crime was all about, noting the
12  differences that you had with it in regards to some
13  statements made in it.  However, in general, it was
14  written a long time ago and a lot of years have passed
15  since this life crime or the murder of the three females
16  that you admit to have occurred and even furthermore
17  since those rapes that occurred that you were involved
18  in and admitted to many years before that.  It was
19  helpful for us to get an understanding about the
20  environment at the time of the life crime, in sum an
21  indication of what the life crime was about.  We also
22  incorporate by reference in their entirety the prior
23  Board Reports and the current Progress Reports, pretty
24  helpful.  You've been in prison a long time and those
25  EDDIE EZELL       C-27124      DECISION PAGE 2      4/27/16

1   documents helped guide us through your Central File and

2   what I would say is the good.  A lot of good things are

3   talked about in there and some work you've done, and

4   sometimes bad and then ugly, the 115s that are quite old

5   and so forth.  But they were helpful guiding us through

6   that.  We would incorporate by reference in its entirety

7   the Comprehensive Risk Assessment done by Dr. Backer of

8   an interview that occurred on or about January the 29th,

9   2015.  That occurred here at Ironwood State Prison.  And

10  it was helpful to understand what a clinical

11  psychologist believes is -- has discussed about your

12  prior history, discussed about the life crime and your

13  progress and performance since you've come to prison,

14  and ultimately the overall risk assessment provided by

15  the professional in his professional opinion.  We did

16  not mark any items as exhibits, did we?

17          DEPUTY COMMISSIONER POMERANTZ:  No.

18          PRESIDING COMMISSIONER ROBERTS:  Okay.  Because I

19  think we had -- pretty much everything was pointed out

20  or was read into the record.  All right then.  We

21  reviewed your confidential file.  The most recent

22  document in there is a document dated April the 7th,

23  2013.  It was not in any way negative to you.  So we

24  didn't find anything that was relatively recent that had

25  EDDIE EZELL       C-27124      DECISION PAGE 3      4/27/16

1   -- would have any bearing on your suitability for

2   parole.  We also considered the testimony you presented

3   at this hearing.  Now the fundamental consideration when

4   making a parole eligibility decision is the potential

5   threat to public safety upon an inmate's release.

6   Accordingly, if there's a denial of parole it should be

7   based upon evidence in the record of the inmate's

8   current dangerousness.  And it's having those legal

9   standards in mind that we find Mr. Ezell continues to

10  pose an unreasonable risk of danger to society or a

11  threat to public safety and is therefore not suitable

12  for parole today.  The record reflects some

13  circumstances tending to show suitability for parole.

14  We noted that he's of an age that would suggest the

15  probability of recidivism is reduced.  He's going to be

16  62 years old, I think tomorrow --

17        INMATE EZELL:  Yes.

18        PRESIDING COMMISSIONER ROBERTS:  -- I think is

19  his birthday.  In regards to his age, we also did

20  consider Elderly Parole considerations.  This Panel

21  attempted to address how his advanced age and long-term

22  confinement and diminished physical condition, if any,

23  would impact his potential risk for violence.  We noted

24  that he is in generally good health.  He does use a cane

25  EDDIE EZELL      C-27124      DECISION PAGE 4      4/27/16

1   which does limit some of his mobility.  But he seemed to

2   be able to get around and work and he has worked in the

3   past and seems to be very much wanting to remain active

4   including his long-term plans are to be a caregiver for

5   his parents which is -- can be very demanding.  And in

6   review of everything we felt that those factors -- none

7   of those factors appeared to have impacted his potential

8   for future violence.  So we did take into consideration

9   Elderly Parole elements.  We believe he's made realistic

10  plans for release.  He plans to go to PREP.  He has been

11  working with PREP on and off for a number of years.  He

12  has been taking correspondence courses with them.  He

13  knows those people.  He plans to -- after completing

14  PREP, he plans to go with his parents.  It might very

15  well be an out-of-state placement.  And we would

16  encourage him to continue to explore that.  And we think

17  that might be very supportive.  He plans to be a

18  caregiver to his parents.  And we talked about some of

19  the concerns we had had going back to his parents.  But

20  we think he's adequately addressed those issues.  And

21  going to his parents, given their age and disabilities

22  might be helpful for them and it might be helpful for

23  him.  We do note that he has completed upholstery, a

24  vocational assignment.  And we certainly saw he had the

25  EDDIE EZELL      C-27124     DECISION PAGE 5     4/27/16

1   ability to be involved in electrical work because he's

2   done that in the -- in the prison.  And so we thought he

3   had fallback vocations and marketable skills that he

4   could put to use upon release.  And we felt the fact

5   that he hasn't any -- had any serious rules violations

6   since 1985 also weighed in his favor.  However, these

7   positives are far outweighed by other circumstances

8   tending to show unsuitability for parole and suggest if

9   released he would pose a potential threat to public

10  safety.  Specifically, we find that he committed the

11  life crimes in a particularly heinous and atrocious

12  manner.  In this case, the victim who he knew and had a

13  relationship with, he and she became involved in an

14  argument.  A knife was produced and he indicates he

15  stabbed the victim.  He does not remember stabbing the

16  other two victims, that being the 13-year-old and the

17  five-year-old.  We did rely upon information in the

18  record to talk about the timing of those things which

19  would appear to us at numerous counts indicate there was

20  a time -- there are some indicators that they may have

21  died at the same time.  However, the vast majority of

22  the information would suggest that there was a

23  separation between the murder of one or more of the

24  victims which is well discussed in the record.  But

25  EDDIE EZELL       C-27124     DECISION PAGE 6     4/27/16

*Northern California Court Reporters*

1   clearly the nature of the physical attack and the
2   stabbings, multiple stabbings of the young children in
3   particular is of concern and was particularly heinous
4   and atrocious. His actions did result in the deaths of
5   these three women, one of them being a very young girl.
6   And furthermore, the reasons for committing the offense,
7   he believes, was his substance abuse which he took and
8   he believes his selfishness from his perspective he
9   thinks that he must have been angry when this happened.
10  We believe he has a previous record of violence. We
11  think his criminal history is well-documented, and prior
12  to that, well documented, his violence starting at a
13  very young age, commitments to CYA and the -- I note the
14  prior rape and attempted rape which were discussed well
15  in the record. We believe that he had an unstable
16  social history prior to incarceration. He spoke to
17  being both physically, mentally and sexually abused.
18  And, of course, the use of substances early on at a
19  young age clearly made his ability to develop and
20  maintain long-term pro-social relationships nearly
21  impossible as is well documented when you look at the
22  type of victims he's had, both documented victims and
23  undocumented victims which he spoke to today. Now the
24  California Supreme Court has ruled that after a long
25  EDDIE EZELL      C-27124      DECISION PAGE 7      4/27/16

13

1  period of time immutable factors such as the commitment

2  offense, prior criminality and unstable social history,

3  these things may no longer indicate a current risk of

4  danger to society in light of a lengthy period of

5  positive rehabilitation. So accordingly in this case we

6  must consider whether there are other circumstances that

7  when coupled with the above immutable circumstances

8  would lead us to the conclusion that he continues to

9  pose a threat to the public safety and we believe he

10 does for the following reasons. We considered but gave

11 no relative weight to the fact that he did have serious

12 misconduct early on in his incarceration. And a lot of

13 years of passed and they weren't for violence. So we

14 didn't give them any relative weight. But we wanted

15 everybody to know that we considered that misconduct

16 that happened but it wasn't particularly helpful in any

17 way today in talking about his current state of affairs.

18 But we did give significant weight to the fact that we

19 believe he lacks insight into the underlying causative

20 factors of his criminality and the -- prior to the life

21 crime and the three murders, specifically the murders of

22 Anita, Nicole and Deborah. He says that he can't

23 explain it but he knows he was angry. Yet the source of

24 his anger and how it related in any way to the two

25 EDDIE EZELL       C-27124     DECISION PAGE 8     4/27/16

1   children is not known.  Power and control have been the

2   hallmark features of his violence against females.  He

3   fails to acknowledge this and connect it to his violent

4   impulsive acts towards females.  He is recently taking a

5   correspondence course in Domestic Violence but said he

6   does not have those issues while at the same time

7   stating he slapped a couple of his past female partners

8   to quote, "stop it from getting worse," end of quote.

9   Clearly, his understanding into the complex issues of

10  domestic issue is superficial at best.  It clearly -- it

11  is clear to this Panel that he lacks the necessary

12  skillsets and coping mechanisms to futuristically abate

13  this mindset.  And his lack of violence in prison can

14  largely be explained by his lack of a victim base in

15  that it's not here in prison, his lack of victim base

16  being females over which he would have dominion and

17  control and therefore assert his power.  Those simply

18  don't exist in prison.  So the fact that he's not

19  violent in prison is not particularly surprising to this

20  Panel.  But it does suggest to us based on what we saw

21  was that he has yet to develop necessary skillsets and

22  coping mechanisms to abate this mindset in free society.

23  And that makes him a current risk of danger to the

24  public safety.  We also find that he's failed to

25  EDDIE EZELL      C-27124      DECISION PAGE 9      4/27/16

15

INMATE COPY

1  demonstrate sufficient progress in other areas that tend

2  to show he is suitable for parole but instead

3  demonstrate his unsuitability for parole.  Today the

4  Panel feels he failed to show adequate signs of remorse.

5  He talked about remorse.  He certainly knows what it is.

6  But in demonstrating it today, we felt that -- we didn't

7  get a sense of -- a sincere sense of remorse.  He

8  certainly didn't display any of the affect of it.  And

9  it seemed fairly intellectualized remorse.  And we

10  weren't left with the feeling that he had truly remorse.

11  And we know that individuals who do not have true

12  remorse and who can't fully accept responsibility for

13  their criminal actions, those people are likely to

14  recidivate.  And that makes him a current risk of danger

15  to the public safety.  We gave moderate weight to that.

16  We also gave moderate weight to the fact that we feel

17  he's not engaged in institutional activities that

18  indicate an enhanced ability to function within the law

19  upon release.  With specificity, we think he should be

20  taking programs such as a Victim Awareness and Victim

21  Impact and further explore anger and anger management

22  and anger issues with women in particular and to

23  reassess his propensity there.  It's clear to us that he

24  hasn't developed the skillsets there to address those

25  EDDIE EZELL      C-27124     DECISION PAGE 10      4/27/16

1    issues which will help him build such things as

2    appropriate insight into the underlying causative

3    factors.  Also it will help him develop a more genuine

4    perhaps sense of remorse.  And lacking that, we feel he

5    continues to be a unrealistic risk to the public safety.

6    We also considered the Comprehensive Risk Assessment by

7    Dr. Backer and gave significant weight to it.  It is a

8    report as a result of an interview that occurred on or

9    about January the 29th, 2015.  And the doctor found him

10   to be a high risk of future violence in the community

11   setting.  The doctor indicates he lacks insight as noted

12   on page 21 and 22.  We also went back and looked at

13   other clinicians' reports and by and large they have

14   been highs.  And most recently, they have been listing

15   him as high.  So it's not a particularly abnormal risk

16   assessment when we looked across the span of them.

17   Anything you'd like to add?

18        DEPUTY COMMISSIONER POMERANTZ:  I would just add

19   that moving forward to, you know, review the transcript

20   and the doctor's report and work on those areas that we

21   talked about especially Victim Impact, Victim Awareness,

22   Domestic Violence, Alternatives to Violence, that sort

23   of thing.  And also make sure you get copies of your

24   certificates and such into your -- into your file.

25   EDDIE EZELL        C-27124        DECISION PAGE 11        4/27/16

INMATE COPY

1  Because some of it wasn't in here, you know.  So you

2  want to make sure it's in here that -- so people can see

3  it including the psychologists when they review the

4  file.  Because they didn't see any of that stuff.  So

5  you want to make sure you keep it all up to date, you

6  know, through your counselor or through your attorney.

7  Make sure it's all in there.

8        PRESIDING COMMISSIONER ROBERTS:  And take it with

9  him when you see the -- when you go to see the -- any

10  future psychologist.

11        DEPUTY COMMISSIONER POMERANTZ:  Correct.  Yeah.

12        INMATE EZELL:  Well, it was a surprise that I had

13  -- I didn't know I was going to --

14        PRESIDING COMMISSIONER ROBERTS:  Okay.

15        INMATE EZELL:  -- have a new Board Hearing.

16        PRESIDING COMMISSIONER ROBERTS:  Okay.  All right

17  then.  Now based on these findings, we conclude that

18  Mr. Ezell poses an unreasonable risk of danger and a

19  threat to public safety should he be released from this

20  prison at this time.  Accordingly, we find him not

21  suitable for parole today.  This decision is a proposed

22  decision.  It will only become final after 120 days and

23  only after review by the Board of Parole Hearings

24  Decision Review Unit.  You'll be advised in writing if

25  EDDIE EZELL      C-27124     DECISION PAGE 12     4/27/16       (18)

1 there's any changes to that decision. As to the length

2 of denial, the Panel has to abide by Marsy's Law or Prop

3 9. And it is presumed that we deny at 15 years unless

4 there's clear and convincing evidence why the public

5 safety would not require a 15-year denial. We feel

6 there's clear and convincing evidence why the public

7 safety would not require a 15-year denial. The fact

8 that you've established a stable relationship with your

9 family, your mother and father and there was other

10 indices of support which you've talked about through

11 PREP and so forth, we felt that was, in and of itself,

12 an indicator that the public safety would not require a

13 15-year denial. We looked at ten years. And we felt

14 the fact that you lack any violent behavior since you've

15 come to prison, which is not really surprising for your

16 background -- but the fact that you were able to do it

17 people knowing what you're in prison for, we thought

18 that was particularly helpful. And so we felt that

19 would suggest public safety would not require a ten-year

20 denial. Then we looked at the lower echelon of seven,

21 five and three. We felt the fact that your increased

22 age and maturity would reduce the probability of

23 recidivism as you were 62 and the fact that you made

24 realistic plans for release and have marketable skills

25 EDDIE EZELL        C-27124        DECISION PAGE 13        4/27/16

(19)

INMATE COPY

1   for release would suggest the public safety would not

2   require the lengthiest in that group. So the Panel felt

3   that given the work we feel you need to do and the

4   issues that we've just discussed that a five-year would

5   be an appropriate denial period. So this is a five-year

6   denial. Please be aware that you can request an earlier

7   hearing than the denial period we've issued today

8   provided that there's a change of circumstance or new

9   information that establishes a reasonable likelihood

10  that you don't require additional incarceration. And

11  that's done on a Petition to Advance form. And that's a

12  Form 1045A. You can get a copy of that from your

13  correctional counselor or from the law library. With

14  regard to the recommendations we have between now and

15  the next hearing, we recommend that you stay

16  disciplinary-free because you've been able to do that

17  for quite a period of time, you continue to earn

18  positive chronos. You talked about giving back and

19  making amends; that being documented in ways is

20  important, and then finally that you get self-help in

21  the areas that we talked about specifically with anger

22  and violence towards women. Revisit that. Your level

23  of understanding is superficial at best right now and it

24  needs to be very in-depth because in a situation such as

25  EDDIE EZELL        C-27124      DECISION PAGE 14        4/27/16

1  yours where your demonstrated lack of that kind of
2  violence since the life crime can't be really
3  demonstrated here in prison, then insight is critical.
4  And that means you need to work on it through other ways
5  which is through self-help or -- and similar courses.
6  And also we think again Victim Awareness, Victim Impact,
7  those kind of courses will help you with victim
8  awareness as it relates to your -- as to your sense of
9  responsibility and remorse.  And with that, the Panel
10 will conclude the hearing.  We wish you good luck.  The
11 time is 11:30.
12          DEPUTY COMMISSIONER POMERANTZ:  Off the record.
13               A D J O U R N M E N T
14
15
16
17
18
19
20
21
22
23
24
25 EDDIE EZELL       C-27124     DECISION PAGE 15      4/27/16

INMATE COPY

CERTIFICATE AND

DECLARATION OF TRANSCRIBER


I, CYNTHIA L. WILLMETT, as the Official

Transcriber, hereby certify that the attached

proceedings:


In the matter of the Life     )   CDC Number:  C-27124
Term Parole Consideration     )
Hearing of:                   )
                              )
EDDIE EZELL                   )
_____)


IRONWOOD STATE PRISON

BLYTHE, CALIFORNIA

APRIL 27, 2016

8:50 A.M.


were held as herein appears.  Further, this transcript

is a true, complete, and accurate record, to the best of

my ability, of the recorded material provided for

transcription.



_____
Cynthia L. Willmett
May 5, 2016
Northern California Court Reporters
Copyright 2016/All Rights Reserved by BPH

(23)

*Northern California Court Reporters*

```
1          CALIFORNIA BOARD OF PAROLE HEARINGS
2                  D E C I S I O N
3        DEPUTY COMMISSIONER FASSNACHT:  We're back on
4    record.
5        PRESIDING COMMISSIONER FERGUSON:  And the time is
6    roughly 2:20 p.m., and this is the decision portion of
7    the Suitability Hearing for Eddie Ezell, CDC number C-
8    27124.  All persons previously identified have returned
9    to the room.  The Panel reviewed all information
10   received from the public and all relevant information
11   that was before us today in concluding that the prisoner
12   is not suitable for parole because the inmate currently
13   poses an unreasonable risk of danger if released from
14   prison.  The finding of unsuitability is based on
15   weighing the considerations provided in the California
16   Code of Regulations, Title 15.  This is a ten-year
17   denial.  This first consideration which weighs heavily
18   against suitability is past and present mental state,
19   past and present attitude toward the crime.  Mr. Ezell,
20   you severely lack credibility in your presentation.
21   Your version of your commitment offense simply defies
22   credulity.  You told this Panel today that you recall on
23   the date of the commitment offense having an argument
24   with one of your victims, Ms. Anita Lee.  You recall
25   EDDIE EZELL      C-27124      DECISION PAGE 1      3/12/13
```

*Northern California Court Reporters*

1  that the argument involved you wanting to handle the

2  situation where your mother had been threatened. Anita

3  wanted you to let the police handle it, and you wanted

4  to handle it yourself. During the argument, you do

5  recall slapping Anita. You do recall her pulling a

6  knife on you and telling you to get out of her

7  apartment. You do recall not leaving, and you do recall

8  taking the knife from her. What happened next, you

9  claim you have no memory of. The evidence tells us

10  exactly what it was that you did. You tied up Ms. Lee,

11  you raped her, you stabbed her in excess of 30 times.

12  You then went on to stab 13-year-old Debra Jones in

13  excess of 30 times. You additionally stabbed and cut

14  the throat of Anita's daughter, five-year-old Nicole

15  Lee. After the commitment of those three grizzly

16  murders, you managed to travel five miles to your

17  father's residence. You claim that the next memory you

18  have was waking up at your father's residence the next

19  day. The psychologist that has spoken to you most

20  recently, Dr. Twohy, she certainly did not believe you.

21  What she wrote was, "Selective memory impairment, i.e.,

22  exclusive to the life crime is rather self serving and

23  relieves the individual of further responsibility to

24  examine and explore the issues related to the offense.

25  EDDIE EZELL        C-27124        DECISION PAGE 2        3/12/13

*SEE ALSO EXHIBIT 42 BOTTOM*

25

85

1   Perhaps the most plausible hypothesis is that the

2   inability to recall certain events may represent a

3   combination of the above, although it is the beyond the

4   scope of psychology to provide a definitive

5   explanation." This Panel truly does not believe you,

6   and credibility is important.  Credibility is important

7   to every Panel you will see.  We rely on what you say as

8   being the truth in making very important decisions, and

9   not just important decisions about your future,

10  important decisions that impact public safety in

11  general.  As a result of your refusal to discuss your

12  motives of the causative factors and to even admit to

13  yourself as to the causative factors of your behaviors,

14  and the character defects that you possess that you

15  contributed to you behaviors at the time of the

16  commitment offense, you developed no understanding as to

17  what it is specifically about you that has caused you to

18  commit these horrible crimes, this murder of Ms. Lee and

19  the two young girls.  And until you do, you remain at

20  risk to repeat those behaviors, and that makes you a

21  very, very dangerous person.  Today at this hearing, you

22  were asked why you committed this heinous crime.  And

23  you stated, and I wrote it down when you said it, you

24  said, I don't know, I can't answer that.  Well, my next

25  EDDIE EZELL        C-27124        DECISION PAGE 3      3/12/13

26

86

1   question would be, if you don't know, well, who can

2   answer that? The only person that could answer that is

3   you, you choose not to. Early in this hearing, you took

4   offense to the Probation Officer's Report version of

5   your crime. You claimed that the version of the

6   commitment offense stated that your victim was bound and

7   raped. You insist that that was not accurate. You also

8   claimed that you have no memory, so how would you even

9   know if that's accurate? Of course, you're capable of

10  committing that type of crime. You've raped and

11  attempted to rape, and were convicted prior to this

12  crime occurring. So it's very likely that you did that.

13  In fact, your initial rape conviction that got you sent

14  to CYA was one where you bound your victim before raping

15  her. We certainly considered other factors in your

16  case. We considered the Psychological Risk Assessments,

17  both the Comprehensive Risk Assessment that was dated

18  8/19/09 authored by Dr. Pritchard, and the Subsequent

19  Risk Assessment dated 10/22/12 authored by Dr. Twohy.

20  Those reports were both unfavorable and they were not

21  supportive of your release at all. Under the heading of

22  Assessment of Risk for Violence in Dr. Pritchard's

23  report, he conducted a number of tests on you. The test

24  results were quite telling. The first test was for the

25  EDDIE EZELL    C-27124    DECISION PAGE 4    3/12/13

27

1    test for the criminal constructive psychopathy.  He

2    performed on you the Psychopathy Checklist Revised.  And

3    in that test, you were placed in the high range of

4    psychopathy when compared to other male offenders.  The

5    HCR-20, which is the Historical Clinical Risk

6    Management, that assesses violent risk and you resulted

7    in the high-moderate range for violent recidivism.  The

8    LS/CMI, which is a test to determine your risk for

9    general recidivism and not necessarily violence, you

10   scored in the high range in that category as well.  And

11   very telling was your score in the Static 99, and that

12   is the test that is performed to determine your risk for

13   future sexual offense.  And you also scored high in that

14   risk category.  Dr. Pritchard wrote, overall risk

15   assessment, multiple factors determine whether an

16   individual will engage in future violence.  These

17   include his history, personality, emotional stability,

18   general disposition, and anticipated life situation.

19   The present evaluation has taken these factors into

20   consideration in conjunction with the formal risk

21   measurement instruments in determining an overall

22   estimate of risk for future violence.  Mr. Ezell

23   presents a high risk for violence in the free community.

24   Since that report was written in 2009, a Subsequent Risk

25   EDDIE EZELL      C-27124      DECISION PAGE 5    3/12/13

28

1   Assessment was prepared.  That was done by Dr. Twohy.
2   The date on that is 10/22/12, and in that report it was
3   also not favorable.  She wrote at the end of the report,
4   second to the last paragraph, "It does not appear that
5   there has been any change to his insight into the
6   underlying factors in his personality and the
7   psychological functioning that contributed to his life
8   crime."  We also considered your institutional
9   adjustment.  And it is clear to this Panel that you have
10  not yet addressed your significant issue with violence
11  toward women.  You received a term in the California
12  Youth Authority for rape.  You also have a prior state
13  prison term for attempted rape.  And then you committed
14  your commitment offense, which was a brutal murder of a
15  woman and two young girls.  All of your victims have
16  been females.  You have been asked at this hearing if
17  you have yet developed a strategy to avoid your anger
18  turning to violence in the future, and your response was
19  that it would not happen.  You said, and I wrote this
20  down, I forgave those that abused me.  Well, it's a lot
21  more than that.  That may well be the first step towards
22  developing a strategy to keep your violence from turning
23  violent -- or your anger from turning violent toward
24  women in the future, but that is just scratching the
25  EDDIE EZELL      C-27124      DECISION PAGE 6    3/12/13

Northern California Court Reporters

89

1 surface. You have a lot of work to do. You have not

2 come close to understanding what it is specifically

3 about you that has caused you to behave so violently

4 towards women on so many prior occasions. The hearing

5 Panel notes that responses to Penal Code Section 3042

6 Notices indicate an opposition to a finding of parole

7 suitability, specifically the District Attorney of Los

8 Angeles County. Deputy D.A. Wenke is present and he has

9 spoken in opposition today at this hearing. The Panel

10 finds clear and convincing evidence, after considering

11 the public and the victims safety as well as the parole

12 consideration criteria set forth in Title 15, that the

13 prisoner does not require a period of incarceration of

14 15 additional years before your next parole hearing.

15 And for a listing of your institutional adjustment and

16 other commentary, I will turn to Commissioner Fassnacht

17 at this time.

18    DEPUTY COMMISSIONER FASSNACHT: Mr. Ezell, you're

19 at Medium-AR at level three, at the lowest possible

20 based on your commitment offense. You're assigned

21 building porter with satisfactory work reports. You've

22 complete automobile upholstery, you have 14

23 certificates. You've been in PIA laundry, textiles as a

24 lead person, you have 12 certificates in electrical

25 EDDIE EZELL        C-27124        DECISION PAGE 7    3/12/13

30

1    works, you have your GED.   In self-help, you've been in
2    NA as of 2010.  You have under your belt basic AVP, the
3    life skills packets one, two, three and four, and you're
4    working on number five, Criminon.   You completed Way to
5    Happiness.  In addition to that, upon reviewing while we
6    were in deliberations, the emphasis and the discussion
7    centered around pretty much your relationships with
8    women, or the lack thereof.  We're not sure how this all
9    happened to you, Mr. Ezell, and we believe, as you said,
10   I don't know how it happened.  I can't answer why I
11   stabbed also her 30 times.  It was how could you not
12   know after all these years why you sexually abused these
13   women, countless women.  In addition to that, how could
14   you have stabbed a person not only once, but 30 times,
15   slit a child's throat?  You have got to know why you did
16   what you did, and what has changed, because if you go
17   out to the community, you're going to be there with
18   other women.  You cannot have a relationship until
19   you've actually really looked within inside yourself and
20   what makes a relationship, because you have a lot of
21   anger, sir.  And, right now, you're in a controlled
22   environment, so there's no such thing as rape right
23   here, sir, or at least you're treading on eggshells
24   right now.  You really need to get into more self-help,
25   EDDIE EZELL      C-27124      DECISION PAGE 8     3/12/13

31

1  even if it means getting books out of the library, more

2  correspondence courses, Mr. Ezell.  You need to do this

3  for yourself, sir.  With that, I'll turn it back to the

4  Chair.

5      PRESIDING COMMISSIONER FERGUSON:  And another

6  thing that does work in your favor would certainly be

7  your age.  You're 58 years old, and your present age

8  would certainly tend to reduce your recidivism risk.

9  But the Panel has no substantial doubt based on these

10  circumstances that at this time the prisoner does not

11  require a 15-year denial.  Although the Panel wants to

12  commend you for your positives, on balance, the

13  circumstances that make you unsuitable for parole, which

14  we've already discussed with you, heavily outweigh the

15  positive aspects of your case.  After weighing all of

16  the evidence presented today, you are unsuitable for

17  parole because you currently pose an unreasonable risk

18  of danger if released and require at least an additional

19  ten years of incarceration.  The Panel recommends that

20  remain disciplinary-free and, if available, participate

21  in self-help and therapy programming.  Penal Code

22  Section  3041.5(D)(1) provides that you can request that

23  the Board conduct your next hearing earlier than the

24  denial period we issued today provided there has been a

25  EDDIE EZELL        C-27124        DECISION PAGE 9      3/12/13

32

92

1  change of circumstance or new information that

2  establishes a reasonable likelihood that you don't

3  require additional incarceration.  BPH Form 1045A will

4  be provided to you to make such a request along with the

5  written report of the Panel's decision.  And on that,

6  the time is now 2:35.  This hearing is concluded.  Good

7  luck to you, sir.

8      INMATE EZELL:  Okay, thank you.

9          A D J O U R N M E N T

10

11

12

13

14

15

16

17

18

19

20

21  PAROLE DENIED TEN YEARS

22  THIS DECISION WILL BE FINAL ON: 7/10/13

23  YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

24  DATE, THE DECISION IS MODIFIED

25  EDDIE EZELL      C-27124      DECISION PAGE 10      3/12/13

33

93

CERTIFICATE AND

DECLARATION OF TRANSCRIBER

I, MICHELLE WASSUM, as the Official Transcriber,

hereby certify that the attached proceedings:

| In the matter of the Life | ) | CDC Number:  C-27124 |
|---|---|---|
| Term Parole Consideration | ) | |
| Hearing of: | ) | |
| | ) | |
| EDDIE EZELL | ) | |
| | ) | |

CALIFORNIA MEN'S COLONY

VACAVILLE, CALIFORNIA

MARCH 12, 2013

12:10 P.M.

were held as herein appears.  Further, this transcript

is a true, complete, and accurate record, to the best of

my ability, of the recorded material provided for

transcription.

*Michelle Wassum*

Michelle Wassum
March 27, 2013
Northern California Court Reporters
Copyright 2013/All Rights Reserved by BPH

34

48

1  CALIFORNIA BOARD OF PRISON TERMS

2  D E C I S I O N

3  DEPUTY COMMISSIONER LOPEZ:  Okay.  We're

4  back on record.

5  PRESIDING COMMISSIONER BORDONARO:  We are

6  back on the record in the case of Mr. Ezell, and

7  everyone who was previously in the room has

8  returned.  And the Panel has reviewed all of the

9  information received from the public and relied

10  upon the following circumstances in concluding that

11  unanimously that the prisoner is not yet suitable

12  for parole and would pose an unreasonable risk of

13  danger to society or a threat to public safety if

14  released from prison.  The commitment offense was

15  carried out in an especially cruel and callous

16  manner.  Both the victims were attacked and killed

17  in the incident.  It was carried out in a manner

18  which demonstrates an exceptionally callous

19  disregard for human suffering.  The victims were

20  defiled -- excuse me -- mutilated during the

21  offense by the excessive number of stab wounds.

22  The motive of the crime was inexplicable or very

23  trivial in relation to the offense.  These

24  conclusions were drawn from the Statement of Facts

25  wherein the prisoner had killed his girlfriend, 25

26  year old Anita Lee, and also her five year old

27  EDDIE EZELL     C-27124    DECISION PAGE 1    8/23/01  35

49

1   daughter, Nicole Lee, 13 year old Deborah Jones, a
2   neighbor girl.  Apparently, this was early hours.
3   The inmate has been drinking and partaking in PCP.
4   There was apparently an argument.  The inmate does
5   not remember.  The last thing he did remember is
6   his girlfriend -- actually, a slapping between the
7   two of them, and the girlfriend grabbing a knife.
8   Then he remembers waking up at his mother's.  The
9   time of death for Ms. Lee was between 12:00 and
10   2:00 a.m.
11          COMMISSIONER LAWIN:  It was at his
12   father's?
13          PRESIDING COMMISSIONER BORDONARO:  Excuse
14   me.  His father's.  Thank you.  The time of death
15   was between 12:00 and 2:00 a.m.  The time of death
16   for the other two, according to the coroner, were
17   between 4:00 and 6:00 a.m.  Apparently, the law
18   enforcement surmised the inmate returned to the
19   scene to kill the two children.  They were stabbed.
20   The five year old's throat was slashed, and the
21   other took over 30 stab wounds to their person.
22   Previous record, the inmate has a -- he previously
23   sexually assaulted another.  He failed to -- In
24   fact, there was a rape when he was 18 and went to
25   YA.  There was an attempted rape that he was found
26   guilty of.  He also -- His parole was violated for
27   EDDIE EZELL    C-27124    DECISION PAGE 2    8/23/01

50

```
1   that and he was sent to CDC.  He did have that CYA
2   commitment and a prior -- that CDC term.  There is
3   also two other allegations of rape and murder along
4   with the commitment offense, one of Deborah Jo
5   Newton, one of Betty Cook.  The inmate contends
6   that he had nothing to do with those.  One was a
7   former girlfriend, and one was a mother of a former
8   girlfriend.  He also does have an unstable social
9   history, as he did drop out of school.  He also was
10  AWOL from the Army, dishonorable discharge, and did
11  partake in PCP, marijuana and other drug, alcohol
12  use.  Additionally, institutionally he has
13  programmed in a limited manner while incarcerated.
14  He has not completed a vocation.  In fact, previous
15  Boards, the last Board he was at in '96, asked him
16  to upgrade vocationally.  He has not done that
17  since his last Board.  He has not sufficiently
18  participated in beneficial self-help and therapy
19  programming.  His misconduct while incarcerated
20  includes two 115's.  Both of those were in '85.
21  One for gambling paraphernalia, one for conduct.
22  He has eight 128's.  Two of those were since his
23  last Board.  In '99, for participation in work
24  stoppage, and the other for conduct.  The
25  psychological report dated January 25, 2001
26  authored by D. Melbourne is not favorable.  On the
27  EDDIE EZELL    C-27124    DECISION PAGE 3    8/23/01
```

37

51

```
 1  three assessment instruments, the PCLR, the inmate
 2  scored within the high range.  Psychopathy should
 3  be considered as a risk for him.  The PCR 20, he
 4  scored within the -- as a -- he scored as a
 5  moderate risk for future violence.  And the VRAG,
 6  the Violence Risk Appraisal Guide, he did also
 7  score in the high chance of reoffending.  We'll not
 8  that parole plans, he does have a letter of support
 9  from family, mother and aunt, where he can live.
10  However, he does not yet have any type of a written
11  job offer.  The Hearing Panel notes that the
12  responses to the PC 3042 notices indicate
13  opposition -- indicate opposition to a finding of
14  parole suitability, specifically from the District
15  Attorney of Los Angeles County.  Also, note the
16  correctional counselor writes this inmate would
17  pose an unpredictable degree of threat.  And the
18  Inglewood P.D., thank you, also opposed.  The Panel
19  makes the following findings.  That the prisoner
20  does need therapy in order to -- self-help and
21  therapy programming in order to face, discuss,
22  understand the causative factors that led to the
23  life crime, and explore his culpability in his life
24  crimes.  Until progress is made, he continues to be
25  unpredictable and a threat to others.  In view of
26  his lack of program participation there is no
27  EDDIE EZELL     C-27124    DECISION PAGE 4    8/23/01
```

52

1 indication that the prisoner would behave
2 differently if paroled. The prisoner should be
3 commended in that he does have above average work
4 reports. He did, according to documents we found,
5 although we did not find the specific document, we
6 found reference to it in old Board reports that he
7 did complete a GED in '82, and then taken college
8 -- he has taken college courses. He has worked
9 towards several vocations, but has not completed
10 any of (inaudible). As far as self-help, he does
11 now as of 2000 received some self-study materials
12 through Criminon. However, these positive aspects
13 of his behavior do not yet outweigh the factors of
14 unsuitability. I will also note he should be
15 commended for not having 115's since 185. In a
16 separate decision, the Hearing Panel finds that the
17 prisoner has been convicted of murder, and it's no
18 reasonable to expect that parole would be granted
19 in the next four years. The specific reasons for
20 those findings are as follows. Firstly, the
21 commitment offense was carried out in an especially
22 cruel manner. Specifically, he killed three
23 people, and Nicole Lee, who was five years old,
24 Deborah Jones, a 13 year old, Anita Lee, 25 year
25 old. Anita Lee was his girlfriend. He was on --
26 He was AWOL at the time from the military. He
27 EDDIE EZELL      C-27124     DECISION PAGE 5    8/23/01

53

1  stabbed them, slit the five year old's throat,

2  stabbed them over 30 times.  This was -- The reason

3  was not apparent.  Apparently they had gotten into

4  an argument in the early hours.  However, the

5  inmate remembers nothing after that.  He does not

6  remember the specific circumstances of the crime.

7  Multiple victims were attacked and killed in the

8  incident.  The victims were mutilated.  The offense

9  was carried out in a manner which demonstrates an

10  exceptionally callous disregard for human

11  suffering.  And the motive for the crime was

12  inexplicable for very trivial in relation to the

13  offense.  He does have priors, rape and attempted

14  rape in his criminal background.  He has a

15  psychological report dated January 25, 2001,

16  authored by D. Melbourne, which indicates a need

17  for a longer period of observation and evaluation

18  and treatment.  And the prisoner has not completed

19  necessary programming which is essential to his

20  adjustment, and needs time to gain that

21  programming.  He needs to participate in self-help

22  or therapy programming, and he should complete a

23  vocation.  Because of these reasons, a longer

24  period of observation and evaluation of the

25  prisoner is required before the Board should find

26  the prisoner suitable for parole.  The Panel

27  EDDIE EZELL        C-27124     DECISION PAGE 6     8/23/01

54

1    recommends that the prisoner remain disciplinary

2    free, and if it's available to him, to upgrade

3    vocationally, and also to participate in self-help

4    and therapy programming, and to cooperate with

5    clinicians in the completion of a new clinical

6    evaluation which will be completed prior to his

7    next Board hearing in accordance with the

8    guidelines set forth between BPT and CDC.  That

9    concludes the reading of the decision.

10   Commissioner Lopez, any comments?

11         DEPUTY COMMISSIONER LOPEZ:  No.

12         PRESIDING COMMISSIONER BORDONARO:

13   Commissioner Lawin?

14         COMMISSIONER LAWIN:  No, thank you.

15         PRESIDING COMMISSIONER BORDONARO:  Okay.

16   Then I will adjourn the hearing at 2:13 p.m.

17                    --oOo--

18

19

20

21

22

23

24

25   PAROLE DENIED FOUR YEARS

26   EFFECTIVE DATE OF THIS DECISION_____  41

27   EDDIE EZELL      C-27124    DECISION PAGE 7    8/23/01

22

CALIFORNIA BOARD OF PRISON TERMS

D E C I S I O N

**PRESIDING COMMISSIONER GUADERRAMA:** We're back
on record. The time is 12:40 and all those there were
present before the break are back again. In the case
of Eddie Ezell, we have a unanimous decision. The
panel reviewed all information received from the
public and relied on the following circumstances in
concluding that the Prisoner is not suitable for
parole and would pose an unreasonable risk of danger
to society and a threat to public safety if released
from prison. The commitment offense was carried out
in a manner which exhibits a callous disregard for the
life and suffering of another. Multiple victims were
attacked and killed in the same incident. The victims
were abused and mutilated during the offense. The
murder of the first victim did not deter the Prisoner
from later committing other criminal offenses.
Specifically, he returned to the scene of the first
murder and killed two small children, ages five and
13, by stabbing them to death. These conclusions are
drawn from the Statement of Facts where the Prisoner
murdered a 25-year-old female victim by tying her
spread-eagle on the bed. He raped and strangled her
and then he stabbed her in excess of 30 times, killing
her. Later he returned to murder the five-year-old

EDDIE EZELL      C-27124      DECISION PAGE 1      (2/8/96)

23

1   female victim by stabbing her and cutting her throat.

2   He stabbed a 13-year-old female victim over 30 times.

3   And the reason was to eliminate two witnesses to his

4   first murder. The previous record, the Prisoner has a

5   record of violence or assaultive behavior, an

6   escalating pattern of criminal conduct and violence,

7   previously sexually assaulted other people, had a

8   persistent pattern of tumultuous relationships and

9   criminal behavior which commenced at an early age. He

10  has an unstable social history. He failed previous

11  grants of probation and parole and cannot be counted

12  upon to avoid criminality. He failed to profit from

13  society's previous attempts to correct his

14  criminality. Such attempts include juvenile

15  probation, CYA commitment, county jail, and prior

16  prison term and parole. Has an unstable social

17  history and prior criminality which includes severe

18  drug problems. He has arrests for burglary, forcible

19  rape and attempted rape. Institutional behavior.

20  He's programmed in a limited manner while

21  incarcerated. He has not participated in beneficial

22  self-help and therapy programming. Misconduct while

23  incarcerated includes two CDC-115's. They both were

24  in 1985. The psychiatric factors, the psychological

25  report, the Cat T program report by Dr. Robert Orley

26  (phonetic), dated 3/31/92, is unfavorable. In that

27  EDDIE EZELL    C-27124    DECISION PAGE 2    (2/8/96)

24

1   report, Dr. Orley reported "again, it should be said

2   that Subject did not acknowledge any problem in the

3   area of sexual aggressiveness towards women, even

4   though his history indicates that he is a rapist.

5   Subject still has a mixed personality disorder with

6   aggressive, antisocial, narcissistic and histrionic

7   features. However, psychological testing indicates

8   significant improvements.) Of concern is his attitudes

9   towards and his relationships with women.  Given his

10   history of sexual aggressiveness, Subject was

11   encouraged to participate in a relations group and to

12   confront any problems that he might have in this area.

13   Since Subject denies problems in this area, therapy

14   may prove futile.  However, the psychological council

15   agreed that Subject should be given a chance to

16   acknowledge any problems that he might have in the

17   sexual area and to learn what he can from the

18   relationships group." Then we have two psychological

19   reports, one dated 8/5/94 by Dr. Isaac Sharon,

20   S-h-a-r-o-n, and another one by Dr. William Walsh,

21   W-a-l-s-h, dated 11/27/95  And both of these

22   evaluations (inaudible) and is extremely superficial

23   and they did a miserable job of making a reasonable

24   assessment as to this person's problems and his

25   potential for future violence.  The panel makes the

26   following findings, that the Prisoner needs therapy in

27   EDDIE EZELL    C-27124    DECISION PAGE 3    (2/8/96)